UNITED STATES of America, Appellee.

v.

Andres PEREZ; Hilton Trinidad, Defendants.

Luis J. Rosario, Defendant–Appellant.

No. 97–1035.

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1997.

Decided April 30, 1998.

Nelson S. Torre, Buffalo, NY, for Defendant–Appellant.

William J. Knapp, Assistant United States Attorney for the Western District of New York (Patrick H. NeMoyer, United States Attorney for the Western District of New York, on the brief) for Appellee.

Before: OAKES, KEARSE and FRIEDMAN *, Circuit Judges.

* Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

FRIEDMAN, Circuit Judge:

The appellant Rosario was convicted by a jury in the United States District Court for the Western District of New York on three counts of conspiring to possess, distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846 (1994), possession with intent to distribute that drug, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2 (1994), and possession of that drug, in violation of 21 U.S.C. § 844(a) and 18 U.S.C. § 2. He challenges his conviction on three grounds: (1) the evidence is insufficient to support the conviction; (2) prosecutorial misconduct denied him a fair trial; and (3) the district court erroneously refused to suppress the drugs the police had seized and statements he had made to them. We reject these contentions, and affirm the conviction.

## I.

A. The government introduced the following evidence:

At approximately 7:30 a.m. three men arrived at Buffalo, New York aboard the overnight Greyhound express bus from New York City, and left the bus together: the appellant Rosario, and his co-defendants Perez and Trinidad. Two of them (Rosario and Trinidad) carried small duffel bags off the bus; the third (Perez) retrieved another duffel bag from under the bus, where checked baggage was carried. The three men spoke briefly, entered the bus terminal together, walked through the terminal separately about 15 to 20 feet apart, and rejoined at the taxicab stand. Perez put his duffel bag in the trunk of the cab, and he and the two others (each carrying his own bag) entered the cab.

As the cab started to pull out of the area, Special Agent Johnson of the Drug Enforcement Administration ("DEA"), who had been observing the men from the terminal, approached the cab with his badge in his hand. The cab stopped, the driver got out, opened the trunk and opened the door through which

the three men had entered the cab. Johnson, after identifying himself as a police officer (he was in plain clothes), asked whether he could speak to the men for a minute; both Rosario and Trinidad agreed to do so. The three men got out of the cab, Rosario and Trinidad carrying their bags; the cab driver removed Perez's bag from the trunk and placed it next to him.

Agent VanTine of the Border Patrol joined them, and had a conversation, mostly in Spanish, with the three men. Rosario produced a New York state driver's license and Perez produced an alien registration "green card." Agent VanTine asked the three men to go with him to the police office in the terminal building, so he could determine their immigration status. The three men picked up their bags and followed the agent into the police office.

After informing the three men that Johnson was a DEA Agent concerned with drugs being brought into the city, Agent VanTine asked them whether they would consent to a search of their bags. Rosario and Trinidad opened their bags and pushed them toward Johnson; Perez lifted his bag from the floor and placed it on the desk behind which VanTine was sitting.

Upon searching Trinidad's bag, Johnson found a small working digital scale. In response to the question why he had the scale, Trinidad said that "he had the scales with him because if he buys gold or jewelry on the street, he wants something that he can weigh—weigh whatever he's buying, this gold or jewelry, so that he knows how much to pay." Johnson then searched Rosario's bag, where he found two pagers and an open box of Glad sandwich bags that was 90–95 percent full. In response to the question why he was carrying sandwich bags, Rosario stated that "he carries these sandwich bags around with him in case he buys a sandwich someplace, and doesn't finish the entire sandwich, he likes to carry bags with him so he can wrap the remains of his sandwich in it."

Agent Johnson testified, based on his training and 24 years experience as a DEA Agent, that electric scales play a "usual or necessary part in drug trafficking activities" because drug traffickers use them "to get an exact measurement of the dosage that they are selling"; that plastic bags of the kind found in Rosario's bag "play a common role in drug trafficking activities" because the drugs intended for street sale are placed in such bags; and that for people involved in narcotics, beepers are "a very basic method, the way a buyer and seller maintain contact with each other."

Another agent searched Perez's bag and found there a closed box of laundry detergent which had inside of it a plastic bag containing cocaine.

The three men were then arrested and given Miranda warnings. They were taken to the police station and searched. Each man had a bus ticket from New York City to Buffalo, purchased with cash; the three tickets had been purchased at the same time and were numbered sequentially. Rosario and Perez had no money on them, Trinidad had around $160–165.00.

B. Perez, Trinidad and Rosario were indicted in a three count indictment charging conspiracy to distribute and possess with intent to distribute cocaine, and two counts of possession of the drug. Each defendant moved to suppress the evidence seized from and statements made by them at the bus station. After an evidentiary hearing, the magistrate judge, to whom pretrial motions had been referred, in a detailed report and recommendation recommended that the motions be denied. The magistrate judge concluded (1) that the stopping of the taxicab and the initial discussions between the three defendants and Agent Johnson were consensual and therefore did not constitute a seizure of the defendants in violation of the Fourth Amendment; and (2) that the defendants voluntarily had consented to the search of their bags at the police office. The district court, following a de novo review of the magistrate judge's report and recommendation and of the record, adopted the magistrate judge's proposed findings and denied the motions to suppress.

After a joint trial, the jury convicted the three defendants on all counts. Perez and Trinidad were sentenced almost a year before Rosario. Their separate appeals chal-

lenged their convictions primarily because of the denial of their motions to suppress. This court rejected that challenge and affirmed their convictions. *United States v. Perez,* 112 F.3d 506 (table), 1996 WL 576001 (2d Cir.1996), *cert denied,* —— U.S. ——, 117 S.Ct. 1002, 136 L.Ed.2d 881 (1997).

II.

"In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden. In reviewing such a challenge, we must view the evidence, whether direct or circumstantial, in the light most favorable to the government, crediting every inference that could have been drawn in its favor, and we must affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt. In order to prove a charge of conspiracy, the government need not present evidence of an explicit agreement; proof of a tacit understanding will suffice. The coconspirators need not have agreed on the details of the conspiracy, so long as they have agreed on the essential nature of the plan. The defendant's knowledge of the conspiracy and participation in it with the requisite criminal intent may be established through circumstantial evidence. Any challenge to the weight of the evidence is for argument to the jury, not a ground for reversal on appeal." *United States v. Skowronski,* 968 F.2d 242, 247 (2d Cir.1992) (citations omitted).

A. Under these principles, Rosario "has not met his heavy burden on this appeal." *Id.* There was sufficient evidence from which the jury properly could have concluded that Rosario participated in a conspiracy with Perez and Trinidad to distribute and possess cocaine, which involved a carefully structured plan designed to minimize the likelihood of discovery and, if they were apprehended, of prosecution.

Rosario and his companions in crime traveled together on sequentially purchased tickets on the overnight bus from New York City to Buffalo. On arriving there and leaving the bus, they had a brief discussion. They then separately walked through the bus station approximately 15 to 20 feet apart; from this the jury could have inferred that they were attempting to create the impression that they were not together. Upon leaving the bus station, however, they rejoined each other and entered a taxi cab together.

Neither Rosario nor Perez (who carried the drugs) had any money; Trinidad had about $160.00. This arrangement, the jury could have inferred, might have served to prevent Rosario and Perez together, or Perez separately, from attempting to sell the drugs without the participation of Trinidad.

The three conspirators divided among themselves the drugs and the "tools of the trade" used in packaging and selling them. Rosario carried an almost full package of plastic "baggies," in which drugs consistently are packaged, and two beepers used to make contact with purchasers. Trinidad carried scales customarily used to weigh the drugs. When asked to explain their possession of these items, Rosario and Trinidad gave justifications which the jury properly could have found fictitious: Rosario, that he used the baggies to transport uneaten portions of sandwiches and Trinidad, that he used the carefully calibrated scales to weigh jewelry that he bought and sold on the street. Rosario gave no explanation for his possession of the beepers.

The defendants also took actions which the jury could have inferred were designed to increase the likelihood that, if they were stopped and questioned, they could avoid prosecution. Rosario and Trinidad carried their luggage, which contained only the tools of the trade, with them on the bus and in the taxi cab. Perez' bag, however, which contained the drugs, was carried in the luggage compartment of the bus and placed in the trunk of the taxi cab. If the three had been stopped at an earlier point in the operation, Perez could have said that he had no luggage, and the tools of the trade that Rosario and Trinidad carried in their luggage would have been insufficient to support a criminal prosecution. While an innocent explanation—that the bag was bigger or less convenient to carry on the bus or in the back seat of the taxi—might have been inferable, the jury's verdict was to the contrary.

Rosario relies, of course, on cases in which this court has reversed criminal conspiracy convictions for lack of substantial evidence. Whether the evidence supports a conspiracy conviction necessarily turns on the facts of the individual case, *see United States v. Lubrano,* 529 F.2d 633, 636 (2d Cir.1975), and it is inappropriate and dangerous uncritically to apply the holdings and language of a particular case to significantly different facts. The facts in the cases upon which Rosario relies are sufficiently different from those in the present case that those cases cannot properly be applied here.

Thus, in *United States v. Nusraty,* 867 F.2d 759 (2d Cir.1989), Detrich arrived at the airport after a flight from India carrying a new suit for Nusraty to wear at his planned wedding. Heroin was hidden in the suit. Nusraty met Detrich at the airport, but refused to accept the suit, saying he was not getting married and did not know of any plans to send the suit to him. Nusraty began to walk away from Detrich, and was arrested. In reversing Nusraty's conviction for conspiracy to possess heroin, with intent to distribute, for lack of sufficient evidence this court stated:

> Nusraty's conviction rests principally on his presence at the airport, and on his association with his uncle, his brother, and Detrich, some or all of whom may have been links in a chain of narcotics distribution. However, mere presence at the scene of an aborted drug transfer cannot by itself support a conviction of conspiracy, for mere presence is not enough to prove knowing conspiratorial agreement. By the same token, mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement.

*Id.* at 764 (citations omitted).

In the present case, in contrast, there is far more than Rosario's presence at the bus terminal and his association with Perez and Trinidad. As described above, the evidence permitted the jury to conclude that Rosario was engaged in a joint criminal enterprise with his co-defendants involving a conspiracy to distribute and possess cocaine base. For this reason, the present case also is distinguishable from *United States v. Gaviria,* 740 F.2d 174 (2d Cir.1984), upon which Rosario relies. There the evidence was that the alleged conspirator (Bedoya) was present in an apartment where narcotics were found, and was the owner of an automobile in which she had driven the alleged co-conspirator to and from the apartment; following her arrest a plastic bag containing cocaine was found on the rear floor of the automobile. This court held:

> the evidence adduced at trial failed to demonstrate that Bedoya knew of the existence of the conspiracy charged and knowingly participated in it.

740 F.2d at 184.

B. Rosario's contention that the evidence does not support his conviction on the substantive drug possession counts fares no better. Those counts charged the three defendants with possession with intent to distribute cocaine base (Count II) and possessing cocaine base (Count III). They were charged with the substantive possession offense and as aiders and abettors. "A defendant may be found guilty of a substantive crime on an aiding and abetting theory if he joined the criminal venture, shared in it, and contributed to its success." *United States v. Gordon,* 987 F.2d 902, 907 (2d Cir.1993); *see also United States v. DeFiore,* 720 F.2d 757, 764 (2d Cir.1983). The requirements this court has established for the offense of aiding and abetting are "that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *DeFiore,* 720 F.2d at 764 (internal quotations omitted). The evidence discussed above satisfies those requirements.

## III.

Next, Rosario contends that prosecutorial misconduct denied him a fair trial. The alleged misconduct was that in closing argument the prosecutor improperly vouched for the credibility of witnesses, argued facts not in evidence, and made inflammatory remarks related to Rosario's economic and ethnic background. Rosario argues that the prosecutor's statements are grounds for reversal.

We will reverse for such claims only upon a showing "(1) that the prosecutor's statements were improper and (2) that the remarks, taken in the context of the entire trial, resulted in substantial prejudice." *United States v. Bautista,* 23 F.3d 726, 732 (2d Cir.1994). In determining whether substantial prejudice has resulted, we consider "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." *United States v. Melendez,* 57 F.3d 238, 241 (2d Cir.1995).

A. In his summation, the prosecutor stated regarding the law enforcement officers who testified:

> I submit to you that they are reliable, you can trust their testimony. You can count on them. And there's some reasons why I say that to you.

The prosecutor then discussed particular items of evidence in detail and argued that the evidence supported the officers' credibility.

Attorney statements vouching for the credibility of witnesses are generally improper because they "impl[y] the existence of extraneous proof." *United States v. Rivera,* 22 F.3d 430, 438 (2d. Cir.1994) (quoting *United States v. Bagaric,* 706 F.2d 42, 61 (2d Cir.1983)). In a particular context, however, what might superficially appear to be improper vouching for witness credibility may turn out on closer examination to be permissible reference to the evidence in the case. Cf. *United States v. Miller,* where this court considered a prosecutor's statement that the defendants were "guilty on all counts." 116 F.3d 641, 683 (2d Cir.1997), *pet. for cert. filed,* No. 97–7630 (Jan. 26, 1998), No. 97–8083 (Feb. 26, 1998). We noted that the prosecutor made the statement only after urging the jury "to decide this case based on the evidence in this case, based upon these tapes, based upon the testimony, based upon the video, based upon the photographs." *Id.* Viewed in context, we doubted that the prosecutor's statement "would have been viewed by the jury as more than an exhortation to find [the defendants] guilty based on the evidence." *Id.*

In the present case the prosecutor did not suggest that he had special knowledge of facts not before the jury. He "submit[ted]" that the witnesses were credible, not that he personally knew the facts, and then directed the jury's attention to the evidence supporting his contention. The "You can count on them" related back to the "submission." The "reasons" to which he referred were the evidence he discussed. Because the prosecutor did not "imply the existence of extraneous proof" we cannot say that his statements were an improper vouching for the credibility of witnesses.

Rosario also stresses the prosecutor's points in closing rebuttal that the government's witnesses had no motive to lie and that any inconsistencies in their testimony were not important. According to Rosario, those witnesses could have misstated facts at the suppression hearing to support the admissibility of evidence and this motive might explain inconsistencies between their grand jury testimony and their testimony at the later suppression hearing. Because Rosario believed that he could not discuss before a jury the legal subtleties of a suppression hearing, he argues that it was unfair for the prosecution to tell the jury that its witnesses had no motive to lie.

We see no merit in this argument. The prosecutor asked the jurors rhetorically what motive the government witnesses might have had to lie. The prosecutor suggested that any inconsistencies related to relatively minor matters and did not reveal a "web of deception."

Prosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility. *See, e.g., United States v. Perry* 643 F.2d 38, 51 (2d Cir.1981) ("[I]n light of the fact that the defense lawyers attacked the credibility and honesty of the Government's case in their closings, the Government's statements vouching for witnesses were understandable if not laudable.").

Rosario contends that the prosecutor mischaracterized the defense argument as accusing the government agents of a "frame-up." In its summation, however, the defense ac-

cused a government witness of lying: counsel asked the jury "why doesn't Johnson want to tell the truth?" The defense also referred to the actions of the government agents as a "tangled web that has been exposed." In light of these comments, the prosecutor did not unfairly characterize defense arguments. Moreover he was entitled to defend the credibility of government witnesses. The prosecutor merely asked the jurors to consider whether the witnesses had a motive to lie.

Because the prosecutor's statements related to witness credibility were not improper, we need not address the lack of curative measures or the likelihood of conviction absent the statements.

B. Rosario contends that the prosecutor improperly argued facts not in evidence by stating that the cocaine involved was worth $19,000. In summation a prosecutor may present inferences based on the evidence. *United States v. Casamento,* 887 F.2d 1141, 1189 (2d Cir.1989). An agent had testified that the cocaine was worth about $20 per tenth of an ounce. The prosecutor simply multiplied that price by the weight of the cocaine found to derive the figure of $19,000.

Rosario also contends that the prosecutor improperly suggested to the jury that Rosario and/or Trinidad paid Perez to carry the drugs. References to Rosario and Trinidad had been redacted from Perez's confession and were not in evidence. During his summation, the prosecutor stated:

> If I've got a crime I want to commit and I don't want to do it myself, if I get you to go do it for me, sure, you're guilty, but I am too. I can't come into court and say, well, yeah, I paid him money to do it, but I didn't do it. I'm as guilty as you are. If I know you want to commit a crime. And I want you to commit the crime and I help you commit the crime. I'm an aider and abettor. I'm as guilty as you are. Even if you're the one with the drugs in your bag.

The hypothetical reference to payment for committing a crime was made in the context of explaining to the jury that a defendant might be guilty even though he never carried the drugs himself. The prosecutor did not tell the jury that Rosario had paid Perez. He merely illustrated for the jury what may constitute aiding and abetting a crime. In any event, we cannot say that the remarks, "viewed against the entire argument before the jury, deprived the defendant of a fair trial." *United States v. Pena,* 793 F.2d 486, 490 (2d Cir.1986).

C. In his summation, the prosecutor referred to the jury's power to "cut these guys loose," and he also stated that "if this case stands for anything, it stands for the proposition that [the rumor in the land that only the wealthy get good attorneys] is not true." Rosario contends that these comments, combined with the effect of jurors seeing the defendants in leg chains, "devastat[ed] the presumption of innocence."

The "cut these guys loose" statement is similar to the prosecutor's references in *United States v. Bautista* to the jury's power to "let them back on the street." 23 F.3d 726, 733 (2d Cir.1994). We concluded that "a jury would not reasonably have inferred from such a statement that [the defendant] had been denied bail." *Id.* Similarly, here the prosecutor's use of "cut these guys loose" did not impinge upon the defendants' presumption of innocence.

During the trial counsel and the court became aware that two or more of the jurors had seen the defendants in shackles and may have discussed that with other jurors. The court questioned and gave curative instructions to two jurors. The judge also offered to give curative instructions to the other jurors; the defendants, however, indicated that they preferred deferring further instructions until the charging of the jury and at that point did not request a curative instruction. The court took all necessary action to cure the effect of the juror's knowledge of the defendants' shackles.

Since Rosario did not object to the prosecutor's comment about the high quality of defense counsel, Rosario must show "plain error." *See United States v. Millar,* 79 F.3d 338, 343 (2d Cir.1996). Viewed in context, the comment did not rise to that level. The prosecutor did not stress the defendants' economic status; he merely

urged the jury to disregard the high quality of defendants' representation and focus on the evidence. The statement was not particularly damaging and did not constitute plain error.

D. Rosario contends that he was unfairly prejudiced when the prosecutor referred to a conversation in Spanish between Agent VanTine and the three defendants as "[t]hey do a Spanish thing." Whatever these words may mean, they cannot fairly be characterized as ethnically inflammatory. The prosecutor did not refer to the defendants themselves, but to the fact that Agent VanTine's conversation with the defendants was in Spanish. There is no showing that the statement prejudiced Rosario.

IV.

Finally, Rosario challenges as clearly erroneous the two findings upon which the district court based its denial of the motions to suppress; (1) that the defendants were free to leave during their interrogation at the taxi cab (and therefore that as a matter of law, the police did not "seize" them there); and (2) that the defendants consented to the search of their luggage at the police office.

The same argument was made by Rosario's co-defendant's, Perez and Trinidad, in their prior separate appeals from their convictions. This court by summary order rejected those contentions and affirmed the convictions. *United States v. Perez,* 112 F.3d 506 (table), 1996 WL 576001 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1002, 136 L.Ed.2d 881 (1997). Although that order was non-precedential, it states that it is citable "in a related case." *See* Rule 0.23 of this court. The three defendants were charged in a single indictment and convicted of the same offenses in a joint trial. Rosario's appeal, which is an integral part of a single criminal prosecution, is a related case to the prior appeal.

After summarizing the district court's findings on both questions—findings which cover all three defendants and are based on a single record—the court held that the findings "are supported by the record" and were "ample to support the conclusion that the stop of the taxi did not constitute a seizure of defendants within the meaning of the Fourth Amendment", and to reject the claim that the defendants "did not consent to have their bags searched." *Perez,* 1996 WL 576001 at *1.

Rosario's entire argument on this point in his brief is as follows:

> Given the highly inconsistent testimony of the police regarding the basic facts of the events leading to the arrest of Mr. Rosario, and the materiality of the facts in issue, the finding of the District Court that the police action was lawful was clearly erroneous. Internally inconsistent testimony cannot be relied upon in making findings of fact and the numerous examples of materially inconsistent police testimony, demonstrate a clear pattern of tailoring testimony in order to meet the constraints of the Fourth Amendment.

This generalized argument falls far short of showing that the challenged findings are clearly erroneous, and provides no basis for our reaching a result contrary to the result the court reached in the prior appeals.

CONCLUSION

Rosario's conviction is affirmed.