**UNITED STATES of America,**
**Appellee,**

v.

**Jerome COLLINS, also known as Jerome Anderson, also known as Jerome Bates, also known as Third Degree, also known as Jerome Collums, Defendant–Appellant.**

**Docket No. 01–1566.**

United States Court of Appeals,
Second Circuit.

July 3, 2002.

Joel M. Stein, New York, NY, for Appellant.

John L. Smith, Assistant United States Attorney, (Alan Vinegrad, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

Present WALKER, Chief Judge, WINTER, Senior Circuit Judge and F.I. PARKER, Circuit Judge.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Defendant-appellant Jerome Collins appeals from the judgment of the district court (Ross, *D.J.*) convicting him, after a jury trial, of one count of conspiracy to affect commerce by robbery, in violation of 18 U.S.C. § 1951; one count of affecting commerce by robbery, in violation of 18 U.S.C. § 1951; and one count of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Collins was sentenced principally to a total of 204 months' imprisonment and three years' supervised release. Collins claims that certain statements made by the government in summation denied him a fair trial. We disagree with Collins and affirm the judgment of the district court.

This appeal arises out of certain comments made by an Assistant United States Attorney ("AUSA") in his summation at Collins's trial. At trial, the government presented evidence that Collins entered Jaswinder Dogra's taxicab and, while Collins's accomplice Dorrand Mitchell stood nearby brandishing a shotgun, robbed Dogra. On direct examination, Dogra identified Collins in court as one of the robbers. On defense's cross-examination of Dogra, Collins's attorney sought to cast doubt on the reliability of Dogra's in-court identification. Collins's attorney suggested that the identification might have been influenced by the suggestive circumstances in the courtroom, in particular Collins's placement in the courtroom and the fact that he was one of the only African–Americans there. Now claiming that he misunderstood the defense to be contending that Dogra made his in-court identification by simply picking out whoever was placed in front of him, the AUSA made the following comments in his summation:

> Any decent, honest person would know how important it is to be careful when you say you're sure. For someone to come in a courtroom and simply pick someone out because of where they are sitting, you would have to be a morally bankrupt, horrible person to do that. You would have to have no sense of right and wrong. There's absolutely no evidence whatsoever that Mr. Dogra is that sort of person, none whatsoever.

Collins did not object to these comments at trial.

On appeal, Collins urges reversal of the judgment of conviction on the basis that the AUSA's comments caused him substantial prejudice and deprived him of a

fair trial. According to Collins, the AUSA's comments "misled the jury concerning its evaluation of the victim's in-court identification of [Collins] by falsely creating an inflammatory issue of morality," and "the effect of this false issue was to improperly attempt to vouch for the credibility of the victim when the victim's credibility was not in question, but rather his ability to make a reliable identification." Collins also claims that the AUSA's invocation of morality contradicted the district court's instructions concerning the evaluation of eyewitness testimony and had the effect of improperly shifting the burden of proof onto the defendant. We disagree.

This court has held that to warrant reversal, "prosecutorial misconduct must cause the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Elias*, 285 F.3d 183, 190 (2d Cir.2002) (citation and internal quotation marks omitted). In making this determination, the court looks to the severity of the misconduct, the measures taken to cure it, and the certainty of conviction absent the misconduct. *Id.* Where, as here, the defendant failed to timely object to a prosecutor's statement, "the statement will not be deemed a ground for reversal unless it amounts to a flagrant abuse." *United States v. Rivera*, 22 F.3d 430, 437 (2d Cir.1994) (citation and internal quotation marks omitted).

Here, Collins was not substantially prejudiced by the AUSA's comments because, even if we were to consider the comments improper, they did not amount to a "flagrant abuse." Although the AUSA's comments might have had an inflammatory and distracting effect, the severity of any misconduct is mitigated because, limited as it was to a single part of the summation, it was "an aberration in an otherwise fair proceeding" and did not involve the sort of repeated misconduct whose aggregate effect might cast doubt upon the integrity of the trial. *See Elias*, 285 F.3d at 191. In fact, we do not find the AUSA's comments to be particularly offensive. Viewing the challenged comments in the context of the trial as a whole, we do not think that the AUSA intended to inflame the jury by making an issue of the victim's morality. Rather, the AUSA's comments seem to us to be a response to comments by the defense that, by alluding to the "suggestiveness" of the court's layout, might reasonably have been misunderstood as an attack on the integrity of the government's case. *Cf. Rivera*, 22 F.3d at 438 (noting that the "government is allowed to respond to argument that impugns its integrity or the integrity of its case" with "suitable" language). Moreover, Collins's claim that these comments had the effect of vouching for Dogra's credibility is unpersuasive. In claiming that Dogra was not the type of person to identify just anyone, the AUSA "did not suggest that he had special knowledge of facts not before the jury" or offer his own opinion, but rather emphasized the evidence supporting Dogra's credibility. *See United States v. Perez*, 144 F.3d 204, 210 (2d Cir.1998).

Finally, our determination that Collins was not substantially prejudiced so as to be deprived of a fair trial is further bolstered by the overwhelming evidence of Collins's guilt presented by the government at trial. *See United States v. Modica*, 663 F.2d 1173, 1181–82 (2d Cir.1981). In addition to Dogra's in-court identification of Collins, the evidence of Collins's guilt included Dogra's identification of Collins from a photo array as the robber shortly after the crime; the testimony of Collins's accomplice, Mitchell, detailing Collins's role in the robbery; the testimony of Mitchell's aunt, Tamara Speed, that Collins and Mitchell entered her house after the robbery and that Collins asked to change his clothes; and Collins's own in-

criminating statements made after his arrest.

After considering Collins's other objections to the AUSA's comments, we find them to be without merit.

Accordingly, for the reasons set forth above, the judgment of the district court is **AFFIRMED**.