**UNITED STATES of America,**
**Appellee,**

v.

**Brent WILLIAMS, Defendant–**
**Appellant.**

**No. 03–1393.**

United States Court of Appeals,
Second Circuit.

Sept. 10, 2004.

Thomas R. Fallati, Assistant United States Attorney (Jo Ann M. Navickas, As-sistant United States Attorney), for Ros-lynn R. Mauskopf, United States Attorney for the Eastern District of New York, for Appellee, of counsel.

Alexei Schacht, Nalven & Schacht, Asto-ria, New York, for Defendant–Appellant.

Present: MESKILL, MINER, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

Defendant-appellant Brent Williams ap-peals from the April 29, 2003 judgment of the United States District Court for the Eastern District of New York (John Glee-son, *Judge*) convicting him, following a jury trial, of procuring and using a pass-port in a false name, possessing a firearm after having been convicted of a felony, conspiring to import cocaine, importing co-caine, conspiring to possess with intent to distribute cocaine, possessing cocaine with intent to distribute, and money laundering. We assume the parties' familiarity with the underlying facts and procedural history of the case.

Williams first argues that his trial counsel was constitutionally ineffective in failing (1) to move to suppress certain physical evidence seized during the search of his apartment; (2) to advise him to plead guilty to the passport fraud and firearm possession charges; and (3) to mount a coherent defense. We are mind-ful of the Supreme Court's counsel that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance." *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). But where, as here, the factual record is "fully developed and resolution of the Sixth Amendment claim ... is beyond any doubt," we may decide the claim on the record before us. *United States v. Gas-*

*kin,* 364 F.3d 438, 468 (2d Cir.2004) (internal quotation marks omitted).

To overturn a conviction on the ground of ineffective assistance of counsel, a defendant must show both (1) that his "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Williams cannot satisfy this "rigorous" standard. *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001).

We find that the suppression issue raised by Williams lacks merit. "[U]nder the 'plain view' doctrine, law enforcement personnel may seize an item without a warrant provided that it is 'immediately apparent that the object is connected with criminal activity,' and further provided that the officers viewed the object from a lawful vantage point—i.e., that the officers 'have not violated the Fourth Amendment in arriving at the place from where they can see' the object." *United States v. $557,933.89, More or Less, in U.S. Funds,* 287 F.3d 66, 81 (2d Cir.2002). Thus, "[a]s long as the scope of that initial search comported with the Fourth Amendment—i.e., was no more intrusive than necessary to accomplish [the] purpose [specified in the warrant]—then it is of no constitutional moment that the object found was not what was sought." *Id.* at 81–82. Here, Williams does not dispute that the officers were lawfully in his apartment pursuant to a warrant authorizing the seizure of immigration documents; nor does he challenge the scope of their search. Williams, nevertheless, argues that the plain view doctrine did not authorize the seizure of the bag-

gies, scales, and currency found in his apartment because these items are "neither contraband nor dangerous." [1] But, in order for the seizure of an item to be authorized under the plain view exception, all that is required is that the officer "ha[ve] probable cause to suspect that the item is connected with criminal activity." *United States v. Martin,* 157 F.3d 46, 54 (2d Cir.1998) (internal quotation marks omitted). Here, the officers had ample probable cause to believe that the scales, baggies, and currency were evidence of narcotics trafficking. *See United States v. Perez,* 144 F.3d 204, 208 (2d Cir.1998) (characterizing baggies and scales as "tools of the [narcotics] trade"); *United States v. Gonzalez,* 922 F.2d 1044, 1056 (2d Cir. 1991) (holding that the large amount of cash found on the defendant when he was arrested tended to demonstrate that he was a drug dealer); *United States v. Terry,* 702 F.2d 299, 319 (2d Cir.1983) (holding that the officers were justified in opening a box found in plain view that bore the name of a balance scale used in the narcotics industry). Because the seizure was lawful, Williams was not prejudiced by his counsel's failure to file a suppression motion.

Additionally, Williams has failed to show that the outcome of his proceeding would have been different had he pled guilty to the passport and firearm possession charges. The evidence showing that Williams possessed a fraudulent passport and a loaded firearm also tended to prove his involvement in the narcotics offenses charged in the indictment. The district court therefore would have admitted this evidence even if Williams had not stood trial on the firearm and passport counts. *See United States v. Soto,* 959 F.2d 1181, 1187 (2d Cir.1992) ("[F]irearms are . . .

---

1. By contrast, Williams concedes that, as contraband, the firearm found in his home was

lawfully seized.

tools of the trade as are commonly recognized articles of narcotics paraphernalia" (internal quotation marks omitted)); *United States v. Torres,* 901 F.2d 205, 235 (2d Cir.1990) ("[E]vidence of possession of . . . weapons[ ] may be introduced as proof of a narcotics conspiracy."); *see also United States v. Williams,* No. 02 CR 0799(JG), slip op. at 6 (E.D.N.Y. May 7, 2003) ("The evidence of the fraudulent passport would have been introduced even if [Williams] had pled guilty to Counts 1 and 2 prior to trial. . . ."). We, moreover, do not agree that the defense strategy mounted by Williams's trial counsel fell below an objective standard of reasonableness under the circumstances. Thus, we see no merit in Williams's ineffective assistance of counsel challenge.

■ Williams also asserts that the district court erred in applying a two-point enhancement to his offense-level calculation, pursuant to U.S.S.G. § 3B1.1(c), based on his role as an organizer, leader, manager, or supervisor in the narcotics conspiracy.[2] We review the district court's "factual findings concerning [Williams's] role for clear error" and its legal conclusion that, on these facts, Williams deserved a § 3B1.1(c) enhancement *de novo. United States v. Si Lu Tian,* 339 F.3d 143, 156 (2d Cir.2003).

A defendant may properly be considered a manager or supervisor under § 3B1.1(c) "if he exercise[d] some degree of control over others involved in the commission of the offense . . . or play[ed] a significant role in the decision to recruit or to supervise lower-level participants." *United*

States v. Burgos, 324 F.3d 88, 92 (2d Cir. 2003) (internal quotation marks omitted). At trial, Damien Prescod testified, *inter alia,* that, when he traveled to the United States from Trinidad to deliver drugs, he was met by Williams at the airport, stayed in Williams's apartment, counted money at Williams's request on one occasion, and carried money from Williams back to Trinidad. Further, Precod stated that, during his October 2001 trip to the United States, Sherwin Lewis frequently visited Williams's apartment and left with bags, and that, at a meeting at which all three men were present in Trinidad, Lewis demanded payment from Williams for referring customers to him. Considering this testimony, we hold that there was sufficient evidence to support the district court's finding that Williams supervised Prescod and Lewis. This conclusion is not undermined by Williams's contention that Keith Bissessar was the true leader of the conspiracy because we have ruled that more than one defendant in a conspiracy may exercise a supervisory role. *See Si Lu Tian,* 339 F.3d at 157.

According, we AFFIRM the judgment of the district court. The mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004) and *United States v. Fanfan,* —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in

---

**2.** In *United States v. Mincey,* 380 F.3d 102 (2d Cir.2004) (per curiam), we rejected the argument that in light of the Supreme Court's decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Sixth Amendment "now requires every enhancement factor that increases a Guidelines range to be pleaded and proved to a jury

beyond a reasonable doubt." *Id.* at 2535. We concluded that "until the Supreme Court rules otherwise, the courts of this Circuit [should] continue fully to apply the Guidelines." *Id.* Accordingly, we do not consider any challenges to Williams's sentence premised on *Blakely.*

whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of this order that address Williams's sentence until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*