16-2970 (L)
*United States v. Booker (Christian)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of August, two thousand twenty.

PRESENT:
> JON O. NEWMAN,
> PETER W. HALL,
> GERARD E. LYNCH,
> *Circuit Judges.*

---

United States of America,

> *Appellee*,

v.

Jamie Booker, AKA Mo-Mo, Robert Fields, AKA Boy Boy, Jamelle Harper, AKA B-Realz, Jarh Wreh, Robert Jones, AKA Rob, Paul Ford, AKA Uncles, AKA Unks, AKA Dred, AKA Ninja,

> *Defendants,*

Anthony Christian, AKA Nitty, Jason Quinn, AKA Q, Anthony Britt, AKA N-O, Harvey Christian, AKA Black,

> *Defendants–Appellees.*

Nos. 16-2970(L), 17-437(CON), 17-2885(CON), 18-1776(CON), 18-2170(CON)

---

For Appellee:                          KEVIN TROWEL, Assistant United States
                                       Attorney (Allon Lifshitz, Richard M. Tucker,
                                       Assistant United States Attorneys, *on the
                                       brief*), *for* Seth D. DuCharme, Acting United
                                       States Attorney for the Eastern District of
                                       New York, Brooklyn, NY.

For Appellants Anthony and Harvey Christian:    RANDALL D. UNGER, Bayside, NY (Michael
                                       H. Gold, New York, NY; Sally Butler,
                                       Bayside, NY, *on the brief*).

For Appellant Jason Quinn:              SEAN M. MAHER, New York, NY.

For Appellant Anthony Britt:            ROBIN CHRISTINE SMITH (Leean Othman, *on
                                       the brief*), New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Vitaliano, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court as to Anthony Christian, Harvey Christian, and Jason Quinn are **AFFIRMED**. Anthony Britt's sentence is **VACATED**, and his case is **REMANDED** for resentencing consistent with this order.

Defendants-Appellants Anthony Christian, Harvey Christian, and Jason Quinn appeal judgments of conviction, entered after a jury trial, for racketeering, racketeering conspiracy, narcotics distribution conspiracy, use of firearms in relation to crimes of violence and drug trafficking, conspiracy to commit murder, and other crimes. Defendant-Appellant Anthony Britt appeals from the district court's judgment sentencing him to fifteen years in prison after he pleaded guilty to similar charges. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I. Issues raised by Anthony and Harvey Christian and joined by Jason Quinn**

The Christians and Quinn challenge their convictions on the following grounds: (1) the government's rebuttal summation denied them their right to a fair trial because it vouched for its witnesses, maligned defense arguments, and selectively and unfairly referenced trial testimony; (2) there was insufficient evidence to support their convictions on certain charges because the government failed to prove the existence of a racketeering enterprise between 2001 and 2010, failed to prove the charge of conspiracy to murder in aid of racketeering because the evidence suggested that the murder conspiracy was unrelated to the racketeering enterprise and the testimony of government witnesses Brian Humphreys and Paul Ford was incredible as a matter of law, and (3) the district court erred in denying their motion to suppress the wiretap evidence because the wiretaps were obtained improperly as there were less intrusive means by which the evidence could have been secured.

First, we disagree that the government's rebuttal summation deprived the Christians and Quinn of a fair trial. We reverse a conviction for claims of prosecutorial misconduct on the grounds asserted here only upon a showing "that the remarks, taken in the context of the entire trial, resulted in substantial prejudice." *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (internal quotation marks omitted). "The law recognizes that summations—and particularly rebuttal summations—are not detached expositions with every word carefully constructed before the event. Precisely because such arguments frequently require improvisation, courts will not lightly infer that every remark is intended to carry its most dangerous meaning." *United States v. Aquart*, 912 F.3d 1, 27 (2d Cir. 2018) (internal quotation marks, ellipsis, and alterations omitted).

In closing, the defense attacked the credibility of cooperating witnesses and argued that the government "exercised bad judgment" in putting those witnesses on the stand. Tr. 2425; *see also,*

3

*e.g., id.* at 2424–25 ("It's mind boggling, frankly, you know, this person was given a plea agreement, a cooperation agreement with that history . . . . [T]his is not someone you can trust [to] come before a jury like you in a serious case like this and tell the truth."). In rebuttal, the government explained:

> At every turn when a cooperator told us something, agents and prosecutors went back and said what can we do to corroborate what we've been told? How can we establish that what we're hearing is actually true? When we have to present this case to a jury some day, they're going to have expected us to look under every rock, chase down every lead, and do everything that we can to confirm each and every possible fact that's possible to confirm because we're going to be asking these jurors to make some very important decisions based on testimony from people who've committed some very serious crimes.

*Id.* at 2577–78. In addition, the prosecutor characterized certain defense arguments as "a classic defense tactic," "a smokescreen," and a "gamble that you'll say . . . hopefully Anthony Christian, Harvey Christian and Jason Quinn can just be someone else's problem." *Id.* at 2567. Following the closing remarks, the judge reminded the jury that "whatever the lawyers say is not evidence." *Id.* at 2610.

Our review of the record compels us to conclude that the prosecutor's summation did not deny defendants a fair trial. The government's statements were improper because they ask the jury to rely on the prosecutor's assertions as to internal government processes, and conversations between prosecutors and agents, of which there is no direct evidence in the record. Nonetheless, they do not make this the "rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992) (internal quotation marks omitted). Appellants' further argument that the government was guilty of "selective" quotation from the record in the rebuttal summation is unpersuasive, as the jury heard the complete testimony during the trial, and the judge reminded the jurors that they could review the transcript themselves.

4

Next, the Christians and Quinn argue their motion for a judgment of acquittal should have been granted because the government failed to prove the existence of a racketeering enterprise between 2001 and 2010. We review challenges to the sufficiency of the evidence *de novo*, considering the totality of the evidence and drawing all permissible inferences in the government's favor, and we will affirm if any rational jury could have found the defendant guilty beyond a reasonable doubt. *See United States v. Taylor*, 816 F.3d 12, 22 (2d Cir. 2016). Appellants claim that the "huge gaps in criminal activity far exceeded a mere period of quiescence and belied the existence of any continuing enterprise." Christian Br. 35. "While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence." *Boyle v. United States,* 556 U.S. 938, 948 (2009). Even assuming *arguendo* that a nine-year gap in criminal activity exceeds a permissible period of quiescence, our review of the trial record confirms that a reasonable jury could have found that, rather than being quiescent between 2001 and 2010, the enterprise continued selling drugs and engaging in violence in connection with that activity during that period.

The Christians and Quinn further argue that the government failed to prove the charge of conspiracy to murder in aid of racketeering (Count Five) because the evidence suggested that that conspiracy was unrelated to the racketeering enterprise. We disagree. Viewing the evidence in the light most favorable to the government, Britt's testimony provided sufficient evidence from which the jury could have inferred that the personal dispute between Britt and the victim came to involve the enterprise when the victim fired a gun at Harvey Christian and 55 Bowen Street (where the Christians lived and their enterprise dealt drugs). *See United States v. Thai*, 29 F.3d 785, 815 (2d Cir. 1994) ("Th[e] relationship [between the predicate acts and the criminal enterprise] is satisfied

if the offense was related to the enterprise's activities, whether or not it was in furtherance of those activities . . . .").[1]

Next, the Christians and Quinn argue that the testimony of government witnesses Brian Humphreys and Paul Ford was incredible as a matter of law. "Under our system of jurisprudence, . . . normally the resolution of issues of credibility is exclusively the province of the jury." *United States v. Shulman*, 624 F.2d 384, 388 (2d Cir. 1980). "[T]heoretically[,] the testimony of a witness might be so incredible that no reasonable juror could believe him . . . ." *Id.* But that exception primarily applies "[w]here testimony is patently incredible or defies physical realities." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). Appellants' attacks on the witnesses' credibility here are limited to the witnesses' backgrounds and prior crimes. These same arguments were made to the jury during closing statements and to the district court in the motion for judgment of acquittal. Without more, we decline to second-guess the jury and district court's determinations of witness credibility. *Shulman*, 624 F.2d at 388.

Finally, the Christians and Quinn argue that the district court erred in denying their motion to suppress evidence obtained through court-authorized wiretaps. They contend that the wiretap was improper because the government could have relied on the less intrusive use of confidential informants to obtain the evidence, and that the evidence therefore should have been suppressed. *See* 18 U.S.C. § 2518(3)(c). "[W]e grant considerable deference to the district court's decision whether to allow a wiretap, ensuring only that the facts set forth in the application were minimally adequate to support the determination that was made . . . ." *United States v. Concepcion*, 579 F.3d

---

[1] Quinn raises additional challenges to the sufficiency of the evidence but provides little beyond recitations of law and conclusory statements. These claims are waived. *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal citations omitted)).

214, 217 (2d Cir. 2009) (internal quotation marks omitted). We agree with the district court's finding that the affidavits submitted in support of the wiretap applications were sufficient. This is not a case that gives "the impression that the Government chose to [apply] for the wiretap not because it was necessary, but because it was easier." *Id.* at 220. The affidavit explained that the information obtained from confidential informants, undercover agents, physical surveillance, and other sources was useful but that it was deficient in important areas of the investigation.

## II. Issues raised by Jason Quinn

Quinn also challenges his conviction on the following grounds: (1) the district court's rulings that certain phrasing in the opening statements and certain cross-examination questions opened the door to admitting into evidence statements Quinn had made at a proffer session improperly restricted his counsel's performance and thus deprived him of the effective assistance of counsel in violation of the Sixth Amendment; (2) the district court erred in denying his motion to suppress evidence obtained during the protective sweep of his home subsequent to his arrest in the entryway and obtained later in the full search; (3) the government failed to disclose evidence of statements government witnesses would make during trial in violation of *Brady v. Maryland*; (4) the government engaged in misconduct before the grand jury; (5) the district court erred in not granting a bill of particulars to Quinn; and (6) the district court erred in not severing Quinn's charges.

"We consider the district court's interpretation of the scope of a proffer agreement waiver *de novo* and its evidentiary rulings for abuse of discretion." *United States v. Rosemond*, 841 F.3d 95, 107 (2d Cir. 2016). Asserting that the government would not meet its burden of proof does not trigger the waiver because it does not imply factual innocence; there are a number of reasons why the government might fail to meet its burden of proof. *See id.* at 108 ("[T]he proffer

7

agreement does not bar a defendant from arguing that the Government has failed to meet its burden of proof."); *see also United States v. Lyle*, 919 F.3d 716, 732 (2d Cir. 2019); *United States v. Roberts*, 660 F.3d 149, 158 (2d Cir. 2011) ("Particular caution is required when the purported fact is asserted by counsel rather than through witness testimony or exhibits.").

In his opening statement, defense counsel argued that "[Quinn] went to trial because the government *could not* sustain its burden of proof beyond a reasonable doubt," Tr. 72 (emphasis added), which the government then objected to because the words "could not . . . as opposed to will not" suggested that "Mr. Quinn is in fact innocent of the crimes charged," *id.* at 76. Responding to this admittedly "aggressive" objection, Oral Arg. 42:03, defense counsel did not defend his choice of words. Instead he stated that he said "*will* not" rather than "could not," Tr. 77 (emphasis added). After the government indicated that a review of the trial transcript would prove otherwise, defense counsel agreed to have the original assertion corrected for the jury. *Id.* at 77–78. Contrary to the claim in Quinn's brief, given the defense's concession at trial, the court did not ultimately rule on whether a waiver had occurred in the phrasing of the opening statement.

The district court did determine, however, that Quinn's counsel triggered the waiver with the question "when you saw Jason Quinn, you would mostly see him on his own, correct?" *id.* at 998, 1427, because the question "[i]mplicitly assert[ed] that . . . not only is the witness not believable," but also that Quinn was usually alone rather than with the other defendants, a *fact* contrary to other evidence presented at trial, *id.* at 1425–26. We disagree with the trial court's conclusion. Questioning witnesses about prior inconsistent statements challenges the witness's credibility but does not mandate a conclusion that the witness's testimony is factually inaccurate. *See United States v. Oluwanisola*, 605 F.3d 124, 133 (2d Cir. 2010) (noting that accusing a witness of fabricating an event does not trigger the proffer waiver because "it is entirely possible that the

8

event nevertheless occurred despite the inaccurate testimony"). Here too the district court did not admit evidence from the proffer, finding that "while the proffer waive[r] provision was triggered, there was nothing that the government has given to the Court that fairly and in a limited fashion fairly rebuts the factual assertions that was impliedly created by [defense counsel's] question." Tr. 1427. Absent the admission of any proffer statements, we fail to see any prejudice to Quinn from this ruling.

Quinn argues that even though the proffer statement was not admitted into evidence, the court's rulings on what it considered waivers prejudiced Quinn because their chilling effect caused Quinn's counsel to refrain from cross-examining the remaining cooperating witnesses. *See Oluwanisola*, 605 F.3d at 134 (finding a Sixth Amendment violation when "[t]he government's extreme interpretation of *Barrow,* coupled with the court's preliminary ruling that adopted the government's position, had the effect of severely limiting Oluwanisola's ability to mount an effective defense"). We are not persuaded. Here, unlike in *Oluwanisola*, the court did not adopt an extreme interpretation of the scope of the waiver provision. To the contrary, at the outset of the trial the district court accurately described the circumstances under which waiver would and would not be found, in a manner consistent with this Court's precedents. *See* Tr. 18. Moreover, the court explained to defense counsel that it was "liberal on side bars . . . . So if you think you need a side bar before you begin a line of inquiry, you say, your Honor, I need a side bar . . . ." Tr. 21. Finally, although in our view the cross-examination did not trigger a waiver, after finding that it did, the district court applied the waiver narrowly. *Id.* at 1424 (explaining that the court needed to "make a very careful parsing of not only what the triggering mechanism is but also what the remedy is if, in fact, something was triggered"). The court stressed, "it has to be narrow, you can't leave the defendant totally defenseless." *Id.* at 1426. In sum, the district court's rulings did not deprive Quinn

9

of the effective assistance of counsel. This was not a situation "where defense counsel risked letting the horse out of the barn if he did not closely adhere to the court's ruling." *Oluwanisola*, 605 F.3d at 134.

As to Quinn's Fourth Amendment claim, we affirm the ruling of the district court. "On appeal from a challenged suppression order, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact de novo." *United States v. Bohannon*, 824 F.3d 242, 247–48 (2d Cir. 2016). When making an arrest on private premises, law enforcement officers may search beyond spaces immediately adjoining the place of arrest when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). Here, the district court found that the officers could reasonably believe that third persons may have posed a danger to the arresting officers or themselves based on numerous articulable facts including evidence that Quinn was a member of a violent drug ring, the presence of a security camera on his home, the delay in Quinn coming to the front door, evidence that's Quinn's children and their mother came to his home every morning, the presence of toys in the front yard, and the unexpected presence of Quinn's mother. Having in mind this combination of factors, we cannot say that the district court erred. Similarly, Quinn's inevitable discovery argument fails for the reasons articulated by the district court.

Next, Quinn argues that he is entitled to a new trial because the government failed to comply with its disclosure obligations under *Brady v. Maryland,* 373 U.S. 83 (1963) when it did not disclose that trial witnesses would implicate Quinn although they had not mentioned him in the proffer statements to which Quinn had access. We disagree. In this case, the exculpatory

impeachment material was the witnesses' purported silence about Quinn's involvement in the crimes charged during their proffer sessions, not the inculpatory version of the events to which they testified at trial. The documentation of those proffer sessions *was* disclosed to the defense in advance of trial. In any event, the failure to disclose what the witnesses would say at trial was not material, because defense counsel had all the information necessary to impeach the witnesses when they testified to a different version of the events at trial.

We decline to grant Quinn's application to dismiss charges in the indictment. "[T]he mere fact that evidence presented to the grand jury was unreliable, misleading, or inaccurate, is not sufficient to require dismissal of an indictment." *United States v. Lombardozzi*, 491 F.3d 61, 79 (2d Cir. 2007). In addition, any harm Quinn alleges he suffered because of misconduct before the grand jury, or a lack of evidence to indict him, is harmless because "the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge [Quinn] with the offenses for which [he was] convicted." *United States v. Mechanik*, 475 U.S. 66, 67 (1986).

Quinn's challenge to the denial of a bill of particulars fails as there was sufficient detail in the indictment and the government's motion *in limine* to "enable[e] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *see also id*. ("Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." (internal citation omitted)).

Finally, Quinn's challenge to the denial of his motion to sever likewise fails as he has not shown prejudice.

**III. Issues raised by Anthony Britt**

Britt challenges his sentence on the following grounds: (1) the district court erred in the Sentencing Guidelines calculation, (2) the district court failed to give Britt notice that it would engage in fact-finding during sentencing related to his role in the offense, (3) Britt's counsel was ineffective for failing to object to the court's independent fact finding during sentencing, and (4) one of the conditions of Britt's supervised release is unconstitutionally vague per *United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019).

The government concedes that there was error in the calculation of Britt's sentencing guidelines range, and that the error was plain, but contends that we should order a limited remand for the district court to advise whether the correction of the error would have changed the sentence. We believe the preferable course, given that the district court gave no indication that the guidelines calculation was unimportant to its ultimate conclusion, is to remand for resentencing. *See United States v. Wernick*, 691 F.3d 108, 118 (2d Cir. 2012) ("Having found plain error [in the guideline calculation], we remand the case for resentencing.").

In addition, there is no dispute that the condition of Britt's supervised release that provided that if "the probation officer determines that [Britt] pose[s] a risk to another person . . . , the probation officer may require [Britt] to notify the person about the risk and [Britt] must comply with that instruction." is unconstitutionally vague. *See Boles*, 914 F.3d at 111 (holding that the "risk" condition "is vague and affords too much discretion to the probation officer").

In light of the undisputed errors in the original sentencing, a sentencing remand is appropriate. We need not address Britt's remaining claims. Even assuming *arguendo* that the district court made independent fact-finding outside the presentence report, Britt now has notice

of the district court's view of his criminal history and will be able to proceed accordingly at the sentencing proceeding on remand.

We have considered Appellants' remaining arguments and conclude they are without merit. The judgments of the district court as to Harvey Christian, Anthony Christian, and Jason Quinn are **AFFIRMED.** For the reasons stated, we **VACATE** Anthony Britt's sentence and **REMAND** for resentencing consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court