08-4442-cr
United States v. Oluwanisola

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Submitted: May 29, 2009,                                    Decided: May 21, 2010)


Docket No. 08-4442-cr

_____

UNITED STATES OF AMERICA,

Appellee,

v.

OLAWALE LATEEF OLUWANISOLA,

Defendant-Appellant.


_____

LEVAL, POOLER, and PARKER, Circuit Judges.


_____

Defendant-Appellent Olawale Lateef Oluwanisola appeals from a September 8, 2008 judgment convicting him, following a jury trial, of conspiring to import heroin into the United States, in violation of 21 U.S.C. §§ 963, 952(a) and 960(b)(1)(A), conspiring to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and possessing heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C).  Because we agree that the district court (Cogan, J.) erred in applying United States v. Barrow, 400 F.3d

1

109 (2d Cir. 2005), to whether certain evidence elicited at trial would open the door to admission of the proffer statements, we vacate the judgment of conviction, and remand to the district court for further proceedings consistent with this opinion.

DANIEL NOBEL, New York, New York, for Defendant-Appellant

JOHN J. DURHAM, Assistant United States Attorney, for Benton J. Campbell, United States Attorney, Eastern District of New York (Susan Corkery, Assistant United States Attorney, on the brief), for Appellee.

_____

POOLER, Circuit Judge:

Defendant-Appellent Olawale Lateef Oluwanisola appeals from a September 8, 2008 judgment convicting him, following a jury trial, of conspiring to import heroin into the United States, in violation of 21 U.S.C. §§ 963, 952(a) and 960(b)(1)(A), conspiring to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and possessing heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C). Oluwanisola argues (1) that the district court's rulings with respect to whether certain evidence elicited at trial would open the door to admission of statements he had made at a proffer session improperly restricted his counsel's effectiveness and deprived him of the effective assistance of counsel in violation of the Sixth Amendment, and (2) that there was insufficient evidence to establish the requisite quantity of heroin to support his convictions under 21 U.S.C. §§ 841(b)(1)(A) and 960(b)(1)(A). We agree that the district court incorrectly applied United States v. Barrow, 400 F.3d 109 (2d Cir. 2005), to the question of whether certain evidence elicited at trial would open the door to admission of the proffer statements. However, because we conclude

2

that the evidence presented at trial was legally sufficient to support the verdict, we vacate — but do not reverse — the judgment of conviction, and remand for further proceedings consistent with this opinion.

## BACKGROUND

### A.     Arrest

Beginning in the summer of 2005, customs personnel screening for narcotics at the mail processing facility at JFK airport found hundreds of envelopes, each containing approximately forty grams of heroin, similarly packaged, sent from India, and bound for eight addresses in Queens, New York. The envelopes were addressed to various names, but none of the named individuals resided at any of the designated addresses. The buildings were all two-story commercial buildings with first-floor store fronts and second-floor apartments and each had an unlocked mailbox, accessible to any passerby.

To catch the heroin importer, the government arranged a controlled delivery of three of the envelopes bound for one of the addresses on July 7, 2006. The government replaced the heroin in the envelopes with a substance that appeared similar to the drug. About ten minutes after the postal carrier delivered the envelopes, a surveillance team observed Oluwanisola retrieve one of the envelopes and get into his car. Oluwanisola then proceeded to another of the addresses at which packages containing heroin had been intercepted. Oluwanisola checked the mailbox there and returned to his car empty-handed. He then opened the planted envelope, activating an electronic beeper that had been placed inside by law enforcement officers. At that point, the officers moved in. In Oluwanisola's car, they found another unopened envelope containing heroin addressed to a third address that was also a destination for heroin-laden

3

envelopes intercepted by customs.  At the time of apprehension, Oluwanisola was carrying

$3,295 in cash and a cell phone, which the records showed had been used to make multiple calls

to India.  He was arrested and charged with conspiring to possess with intent to distribute more

than one kilogram of heroin.

Oluwanisola did not admit to any heroin-related activity at the time of his arrest.  At trial,

Special Agent Michael Kim testified that Oluwanisola told officers that his brother, Yike, had

asked him to pick up the envelopes and would pay him $200 per envelope.  Oluwanisola said he

thought the envelopes contained documents.  At trial, a postal carrier testified that for at least six

months during the first half of 2006, he observed Oluwanisola watching mail deliveries at one of

the addresses, each time taking the mail out of the box, looking through it, and then putting it

back in the box.  According to the government, over one kilogram of heroin had been destined

for that address alone.  At the time of his arrest, Oluwanisola also admitted that he had

"handpicked" the three addresses at which officers had observed him, as well as a fourth address,

at the request of individuals he knew in India.   This fourth address, like the others, had been the

intended destination for heroin-laden envelopes from India intercepted by customs.  According to

the government, between 2005 and 2006, law enforcement authorities seized at least two and a

half net kilograms of heroin destined for the four addresses Oluwanisola admitted he

"handpicked."

### B.    Proffer Sessions

After his arraignment, Oluwanisola's retained counsel, Leonard Levenson, informed the

government that Oluwanisola wanted to participate in a proffer session in the hopes of obtaining

a cooperation agreement.  A proffer agreement was executed, which provided that the

government would not use any of Oluwanisola's statements against him, except:

> [T]he Office may use any statements made by [Oluwanisola] . . . as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [Oluwanisola] at any stage of a criminal prosecution . . .

Oluwanisola participated in two proffer sessions, one on September 13, 2006, and one on October 19, 2006. During the proffer sessions, he admitted that he knew the envelopes contained heroin and that he was part of a heroin smuggling operation. With respect to the quantity of heroin, Oluwanisola admitted to receiving envelopes containing heroin well in excess of one kilogram.

The government determined that Oluwanisola was not fully truthful regarding the scope of his involvement with the conspiracy and did not offer him a cooperation agreement. As a result, Oluwanisola declined to plead guilty and the case proceeded to trial.

## C.     Pre-Trial Proceedings

The government raised the possible admission of the proffer statements prior to trial in a letter to the court, which stated that "[s]hould an appropriate triggering assertion be made by defense counsel or a defense witness, the government will seek to introduce the defendant's proffer statements which fairly rebut that statement." When the government raised the issue again prior to counsels' opening statements, Oluwanisola's newly appointed counsel, Daniel Nobel, stated that he intended to open with the argument that the government could "not prove beyond a reasonable doubt each and every element to this crime." The government responded that "if it were those words alone spoken by counsel without alluding to specific facts or specific pieces of evidence that may come in, I think that would be appropriate," however, the

government indicated that counsel could open the door to the proffer statements through "references to certain pieces of evidence or to certain elements." The following colloquy ensued:

> MR. NOBEL: . . . I do intend to argue that there is insufficient evidence to tie my client to [all of the heroin-laden envelopes] that will be introduced and I intend to argue that there is insufficient evidence to prove that my client knowingly took possession of an envelope with heroin in it on July the 7th of 2006.
>
> My understanding is as long as I frame the argument as to a specific sufficiency issue, I am entitled to make that argument.
>
> THE COURT: Well, I think you're right but you just went a little bit beyond sufficiency, you said that your client did not knowingly [—]

The government interjected that if defense counsel began talking about the sufficiency of the government's evidence with respect to dates or numbers of envelopes, for example, by arguing, "you can't tie him to a year's worth, you can't tie him to X number," it would open the door to the proffer statements.

After further discussion, the court stated, "I don't think you're on the right side of the law, Mr. Nobel. I don't see how you can argue specific elements of the crime not being met when your client has proffer statements out there that satisfy some of those elements." Nobel responded, "[t]hen there's nothing I can do in the courtroom, Your Honor, and as I read the case law, they do not put defense counsel in the position where he can't do anything." The court clarified, "[w]ell, it depends on the facts of the case, of course . . . . I'm not going to tell you what your defenses are but I am going to say that you can't . . . say, well, there is no proof . . . . " In response, the government admitted that "counsel could come up with statements which address the elements which possibly wouldn't open the door" but reiterated its position that counsel could not refer to "something as specific as [the government's failure to link Oluwanisola] to the

6

conspiracy over the course of time." The court clarified that it was acceptable for defense counsel to "generally tell the jury about the burden of proof and the necessity of the government proving all elements of the crime" but if "you're going to tell them there's no evidence of this element and that element . . . that's where I think you cross the line."

Defense counsel then clarified that he also intended to argue that "there is an insufficiency of proof" on cross examination and during closing arguments as well. The court responded: "Well, I've let you know how I feel about the issue and how I'm likely to go. Obviously this is the kind of issue where I have to hear exactly what Mr. Nobel says to reach a determination whether the door is open but those are the considerations we're operating under."

Consistent with the court's ruling, defense counsel did not argue that the government would present insufficient evidence with respect to certain elements in his opening statement.[1] That same day, defense counsel sent a letter to the district court arguing that under Barrow, 400 F.3d at 118-19, he was permitted to attack the sufficiency of the government's evidence without triggering the waiver in the proffer agreement.

---

[1] Defense counsel stated the following during his opening statement:

The judge has instructed you on principles of law, he's told you about the burden of proof and how it rests with the government so it is natural at the opening statement that the government will tell you what it is that they're going to try to prove in the course of the case. I, on the other hand, will rely on your adherence to these principles of law and along with you will hear these witnesses for the first time and I will make a decision as to how I will question them and at the conclusion of the case I'll stand up and ask for a verdict of not guilty. Until then I ask you to keep an open mind, keep an impartial mind and to bring a serious demeanor and a serious frame of mind to your duties here today and throughout the case.

**D.    Trial**

During Oluwanisola's three-day trial, the government called employees from JFK's mail facility, U.S. Immigration and Customs Enforcement ("ICE") special agents, and U.S. Postal Service employees, who testified regarding the heroin-laden envelopes, the controlled delivery leading to Oluwanisola's arrest, and Oluwanisola's statements at the time of his arrest. The government also introduced over thirty of the seized envelopes as exhibits. Oluwanisola did not call any witnesses.

The issue of Barrow and the proffer statements was raised several times during the course of the trial. During cross-examination of Dennis Coleman, a postal worker who testified that he had seen Oluwanisola pick up mail at one of the suspect addresses and that he had reported Oluwanisola's behavior to his supervisor, defense counsel asked, "Do you know whether or not the supervisor made any written report of what it is you had told him?" The government objected, arguing that Oluwanisola had admitted to picking up mail at the address since 2005 in his proffer, and "[a]ny cross with this witness can only be to dispute the witness' [sic] statements with regard to what he saw." Defense counsel responded that the point of his question was not to dispute whether Coleman had seen Oluwanisola at all, but rather, to see if there was any written report "that would establish the date." After the government pointed out that Coleman had already testified that he had seen Oluwanisola in January of 2006, the court ruled that defense counsel could not ask about a written report without opening the door to the proffer statements because the sole purpose of verifying the date would be to question the credibility of the witness. The court stated that defense counsel could ask about the date generally, but that "[i]f you go further than that in a way that questions his credibility inconsistent with what your client said in

8

his proffer, then you're going to have that problem."

Later, the government called DHS Special Agent Brent Goodwin, an expert in the field of narcotics distribution and smuggling. During cross-examination, the government objected to the following question:

> Would you say that it's atypical or typical of a drug organization, that the person who is the lowest position in the organization would be the individual who would take the role that is most exposed to detection?

The government argued that Oluwanisola admitted in his proffer to identifying the locations for the drug shipments and to "actually speaking to people" which "goes far beyond the simple courier." The government was mistaken – Oluwanisola never admitted during his proffer that he was the person who identified locations for drug shipments – he admitted this to officers at the time of his arrest, and the statement was introduced at trial. Nonetheless, defense counsel agreed to ask only about the definition of "a courier" and to allow the witness to "characterize it however he wants."[2] At several other points, the government raised objections under Barrow that the court overruled.

### E.  Closing Arguments

Prior to summations, the court again addressed the Barrow issue, stating that it "wanted to mention to [the government], that based on some of the concerns you raised about Barrow during the trial, it seemed to me that you have a somewhat more aggressive view of it than I do . . . ."

---

[2] The government also objected to a question by defense counsel regarding whether the surveillance agents who were present when Oluwanisola was arrested had a camera. The court ruled that it was not permissible for defense counsel to imply that the defendant was not actually the person arrested. Defense responded that "I just want to know whether they had a camera, I'm not challenging they arrested my client. . . . [H]ow can I challenge they arrested him[?]" He agreed to withdraw the question, conceding that the line of questioning was immaterial.

Defense counsel stated that he had "certainly tried to tailor my presentation by talking about lack of evidence rather than affirmative proof of something," but noted that there was a gray area between specific insufficiency arguments and affirmative assertions. Defense counsel further stated that he intended to argue during his closing argument that the government's evidence was insufficient with respect to drug quantity, notwithstanding Oluwanisola's admissions in the proffer session. The court replied:

> You know, I'm not sure what I can tell you, Mr. Nobel. I think you have identified the problem. I think the problem varies not only case by case but based on what the defense attorney says during the case and I'm really not in a position to go any further than giving advisory opinions than I have.

During closing argument, defense counsel made several statements regarding the sufficiency of the evidence, including arguments about the quantity of drugs linked to Oluwanisola and his role in the drug conspiracy. At no point during the trial did the district court rule that Oluwanisola had "opened the door" to the admission of his proffer statements.

The jury found Oluwanisola guilty of all three counts of the indictment, answering special interrogatories regarding the type (heroin) and quantity (more than a kilogram) of narcotics. The district court sentenced Oluwanisola to 136 months' imprisonment on each count, to run concurrently.

## DISCUSSION

### (A) Proffer Agreement

Rule 410 of the Federal Rules of Evidence provides that evidence of "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" is not "admissible against the defendant who made the plea or was a

10

participant in the plea discussions." However, because Rule 410 constitutes an exception to the general rule that all relevant evidence is admissible, its limitations are "not to be read broadly," United States v. Griffith, 385 F.3d 124, 126 (2d Cir. 2004), and its protections are waivable, United States v. Velez, 354 F.3d 190, 195 (2d Cir. 2004). Oluwanisola's proffer agreement contained a partial waiver of his rights under Rule 410, allowing the government to use statements made during the proffer sessions only "as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [Oluwanisola] . . . ."

Oluwanisola argues that the district court took an overly expansive view of the waiver provision, causing his counsel to refrain from making key arguments at trial in order to avoid introduction of the proffer statements, and effectively denying him effective counsel in violation of the Sixth Amendment. Specifically, Oluwanisola argues that the district court erred (1) by not allowing his counsel to make any argument with respect to the sufficiency of the evidence during his opening statement; and (2) by not allowing his counsel to elicit testimony during cross examination of the government's witnesses to demonstrate the insufficiency of the government's proof as to key issues.

In United States v. Barrow, we looked at a proffer agreement with almost identical waiver language to that here and addressed the question of what factual assertions would trigger the waiver provision. 400 F.3d 109, 116-121 (2d Cir. 2005).[3] We concluded that the clause "any

---

[3] The only difference between Oluwanisola's proffer agreement and the proffer agreement in Barrow is that Oluwanisola's proffer agreement included the words "directly or indirectly." Because the agreement in Barrow was interpreted to apply to both direct and indirect factual assertions, this difference is immaterial to our analysis.

evidence offered or elicited, or factual assertions made, by or on behalf of [the defendant]" applied to all factual assertions, including those made directly during opening argument or indirectly through cross-examination. Id. at 118. However, we stated that "[t]he mere fact that a defendant pleads not guilty and stands trial is not a factual assertion that triggers the proffer agreement waiver." Id. Moreover, "a defense argument that simply challenged the sufficiency of government proof on elements such as knowledge, intent, identity, etc., would not trigger the waiver here at issue." Id. at 119.

In this case, the district court made a distinction between "generally tell[ing] the jury about the burden of proof and the necessity of the government proving all elements of the crime" and arguing that "specific elements of the crime [have] not be[en] met," ruling that while the former would not trigger the waiver provision, the latter would. Barrow did not make such a distinction and we can think of no rationale that would compel such a result. Under the district court's interpretation of Barrow, even if the government failed to introduce *any* evidence on a certain element, defense counsel would not be permitted to draw the jury's attention to the lack of evidence in his opening statement without triggering the waiver provision in the proffer agreement. Interpreting the waiver provision to permit such a result would leave the defendant, for all practical purposes, defenseless. As the record makes clear, Mr. Nobel was compelled by the court's ruling to limit his opening statement to generalized statements concerning the government's burden of proof and the jury's responsibilities. Under Barrow, however, Mr. Nobel should have been permitted during his opening statement to reference certain elements of the crime and argue that the government would be unable to sustain its burden of proof as to those elements.

12

Whether the court erred in its rulings on cross examination is a more complex question. In Barrow, we noted that

> when confronted with a government argument that a defense opening or cross-examination implicitly satisfies the factual assertion requirement for waiver, a district court may well have to consider carefully what fact, if any, has actually been implied to the jury . . . .

400 F.3d at 119. Defense counsel's question challenging the testimony of the postal worker, Dennis Coleman, presents precisely the type of cross examination question that requires careful consideration by the district court. Coleman testified that he had seen Oluwanisola picking up mail at one of the suspect addresses and had reported the suspicious behavior to his supervisor. Defense counsel asked whether there was a written report, which he explained to the court was relevant because it would "establish the date" of Coleman's observation of Oluwanisola. This date was relevant to whether the government could tie over one kilogram of heroin to deliveries picked up by Oluwanisola because the government's argument was based, in part, on the fact that Oluwanisola had been observed picking up deliveries for several months.

The government argued that any challenge to Coleman's credibility would trigger the waiver provision because Oluwanisola admitted to picking up mail at that address during that time period at his proffer session. However, we do not believe that defense counsel's question can be construed as an implicit factual assertion that Oluwanisola did not pick up mail at that address. Under the government's construction of the waiver provision, defense counsel would be prohibited from asking a witness any question during cross examination about his testimony on direct – even if the testimony was misleading, weak, or contradictory – because the only plausible reason to do so would be to call into question the witness's credibility. We do not read the language in the waiver provision to prohibit Oluwanisola from placing the government's

13

evidence in context, even if that context is that a government witness is not credible.

It is true that in <u>Barrow</u> we stated that some cross examination questions, such as "a question accusing a witness of fabricating an event," 400 F.3d at 119, could make an implicit factual assertion that would trigger the waiver provision. However, in <u>Barrow</u> we were faced with a situation in which defense counsel had affirmatively argued during his opening statement that the defendant had been mistaken for someone else and then asked a government witness during cross examination, "'You made up about meeting the [confidential informant] there that day, didn't you?'" <u>Id</u>. at 114. In that situation one can easily infer that defense counsel was making the implicit factual assertion that no meeting took place because his theory of mistaken identity depended on that fact.

But when the defendant has not directly or indirectly contradicted the facts he admitted in his proffer, the same inference does not apply. The defendant's admission in his proffer statement of the facts the witness testifies to having observed is not an admission that the witness observed those facts. There is no inconsistency or contradiction between a defendant's admission that he robbed the bank and his challenge to a witness's testimony that *the witness saw* the defendant rob the bank and recognizes the defendant. Indeed, there is no principled way of distinguishing between a cross examination question that challenges a witness's perception of an event and a question that accuses the witness of fabricating an event. In both cases it is entirely possible that the event nevertheless occurred despite the inaccurate testimony. Moreover, both blatant accusations of fabrication and gentle inquiries into the witness's memory serve only one purpose – to question the credibility of the witness's testimony. A cross examination question that goes to the credibility of the government's witness, without a factual assertion contradicting

14

the facts admitted in the proffer statement, is not sufficient to trigger the waiver provision here. Thus, defense counsel should have been permitted to question Coleman about the date of his observation without triggering the waiver provision.

The district court also erred in its other ruling on the proffer statements during cross examination, but for a different reason. After defense counsel asked Agent Goodwin a question about the role of couriers in drug conspiracies, the government incorrectly represented to the court that Oluwanisola made statements about his role in the conspiracy during his proffer sessions. In fact, Oluwanisola made those statements at the time of his arrest, which the government introduced as part of its case. Assuming without deciding that defense counsel's question represented a factual assertion, the government was still required to show that the proffer statements "fairly rebut[ted]" that assertion. Barrow, 400 F.3d at 117-19. The district court erroneously ruled that the government had made such a showing here, denying Oluwanisola the opportunity to pursue that particular avenue of cross examination.

In sum, the district court's rulings on the scope of the waiver provision, both with respect to defense counsel's opening statement and during cross examination, violated Oluwinasola's Sixth Amendment rights. However, "[a] constitutional error does not always require reversal of a criminal conviction." United States v. Yakobowicz, 427 F.3d 144, 153 (2d Cir. 2005). While "structural defects," which affect the framework within which the trial proceeds, are subject to automatic reversal, "trial errors" of the type here, which are relatively limited in scope, are subject to harmless error review. Id.; see also United States v. Velez, 354 F.3d 190, 193 n.3 (2d Cir. 2004) (reviewing district court's decision that proffer agreement waiver was enforceable for harmless error); cf. Delaware v. Van Arsdall, 475 U.S. 673, 680-84 (1986) (applying harmless

15

error review to restriction on a defendant's right to cross-examine a witness in violation of the Sixth Amendment).

Under harmless error review, we ask whether we can "conclude with fair assurance" that the errors "did not substantially influence the jury." United States v. Ivezaj, 568 F.3d 88, 98 (2d Cir. 2009) (quotation marks omitted). In conducting this inquiry, we consider factors including: (1) the importance of the unrebutted assertions to the government's case; (2) whether the excluded material was cumulative; (3) the presence or absence of evidence corroborating or contradicting the government's case on the factual questions at issue; (4) the extent to which the defendant was otherwise permitted to advance the defense; and (5) the overall strength of the prosecution's case. Cf. Brinson v. Walker, 547 F.3d 387, 395 (2d Cir. 2008) (citing Van Arsdell, 475 U.S. at 684).

The government argues that any error was harmless because defense counsel was permitted to make sufficiency arguments during summation, based on the court's slightly altered view, expressed after the close of evidence, that the government "ha[s] a somewhat more aggressive view of [Barrow] than I do." Moreover, the government argues that any error during cross examination was harmless because the evidence supporting a guilty verdict was overwhelming. We agree with the government that there was sufficient evidence to convict Oluwanisola, see infra, but are not convinced that the court's error in interpreting the waiver provision was harmless. Because of the court's ruling, defense counsel was unable to pursue avenues of cross examination going to both the quantity of drug involved and Oluwanisola's role in the drug conspiracy, which related to whether Oluwanisola knew that the envelopes contained heroin. Moreover, the effect of the court's ruling went far beyond the several questions that the

16

government chose to challenge. The government's extreme interpretation of Barrow, coupled with the court's preliminary ruling that adopted the government's position, had the effect of severely limiting Oluwanisola's ability to mount an effective defense. In a situation such as this one, where defense counsel risked letting the horse out of the barn if he did not closely adhere to the court's ruling, this limitation was substantial.

The fact that defense counsel was able to make sufficiency arguments during closing arguments does not cure this defect. Having been unable to put the government's evidence in perspective during cross examination, defense counsel was reduced to making sufficiency arguments that bore no relation to the evidence actually presented or elicited. Under the circumstances, we cannot "conclude with fair assurance" that the errors "did not substantially influence the jury." Ivezaj, 568 F.3d at 98. We therefore vacate the judgment of conviction.

**(B) Sufficiency of the Evidence**

Oluwanisola also argues that there was insufficient evidence to link him to the drug quantity in question.[4] Although we "review a claim of insufficient evidence de novo[,] . . . a defendant challenging his verdict on sufficiency grounds bears a heavy burden. We must uphold the jury's verdict if we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Lewter, 402 F.3d 319, 321 (2d Cir. 2005) (internal quotations, citations, and alterations omitted). Moreover, we defer to the jury by "resolv[ing] all inferences from the evidence and issues of credibility in favor of the verdict."

---

[4] We reach this issue even though we have already decided to vacate the conviction on other grounds because if we were to conclude that there was insufficient evidence, we would be required to direct the district court to enter a judgment of acquittal. United States v. Hardwick, 523 F.3d 94, 101 (2d Cir. 2008).

17

United States v. Howard, 214 F.3d 361, 363 (2d Cir. 2000).

As stated above, there was ample evidence connecting Oluwanisola to well in excess of one kilogram of heroin, including: (1) Oluwanisola admitted at his arrest that he had "handpicked" four addresses to which deliveries had been sent; (2) the government introduced evidence that at least two and a half kilograms of heroin had been destined for those four addresses alone; (3) mail carriers saw Oluwanisola at two of the addresses engaged in suspicious behavior for months; (4) Oluwanisola was caught picking up the planted envelope in the controlled delivery; (5) officers found another envelope containing heroin in his car, as well as $3,000 cash. We therefore reject Oluwanisola's sufficiency argument.

## CONCLUSION

For the foregoing reasons, we VACATE Oluwanisola's conviction and REMAND to the district court for further proceedings consistent with this opinion.