16-3701-cr
*U.S. v. Wilson*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of June, two thousand eighteen.

Present:
> BARRINGTON D. PARKER
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
> *Circuit Judges*,

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                        16-3701-cr

JEFFREY DOWDELL, AKA JD, AKA Hov, TASHAWN ALBERT, AKA Knock out, AKA KO, AKA Dirt, KYLE DOWDELL, AKA Bleek, QUONTA ALBERT, AKA Richie, JAMALL HARRIS, AKA Mel, JAMES HANDFORD, AKA Freak, ZEPHANEEA DOWDELL, AKA Zeph, LASHAWNDREA JOHNSON, AKA Country, JAMES HUDSON, AKA Hoodie, DARNYL APGAR, AKA Pun, GENERAL DAVIS, JR., AKA Iceberg, WILLIE STRONG, JR., AKA Bourne Grimey, AKA BG, AKA Willie Strong,

> *Defendants*,

DERRICK WILSON, AKA Sonny Black, AKA D-Ellis,

1

*Defendant-Appellant.*

| | |
|---|---|
| For Defendant-Appellant: | MATTHEW BRISSENDEN, Matthew W. Brissenden, P.C., Garden City, NY.* |
| For Appellee: | ALEXANDER P. ROBBINS, Attorney, Appellate Section, Criminal Division, Department of Justice, Washington, DC (Steven D. Clymer, Appellate Chief, Northern District of New York, John P. Cronan, Acting Assistant Attorney General, Washington, DC, *on the brief*), *for* Grant C. Jaquith, United States Attorney for the Northern District of New York. |

Appeal from an October 21, 2016 judgment of conviction of the United States District Court for the Northern District of New York (Suddaby, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Derrick Wilson appeals from an October 21, 2016 judgment of conviction of the United States District Court for the Northern District of New York (Suddaby, *C.J.*). Wilson was charged with one count of conspiracy to possess with intent to sell crack cocaine and heroin and one count of possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a), 846. Wilson was convicted of both counts after a seven-day jury trial in which he waived his Sixth Amendment right and represented himself. This appeal followed. Wilson now argues that: his waiver of his Sixth Amendment right was not voluntary; he was denied an opportunity to present a complete defense; the district court improperly suggested to the jury several times that it believed Wilson to be guilty; the government improperly vouched for its witnesses during closing arguments; and the jury instructions were erroneous. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

---

* Wilson has also filed supplemental *pro se* briefing.

2

## 1. Background

In 2013, the Drug Enforcement Agency began investigating Wilson for drug trafficking. Wilson and eight of his co-conspirators were arrested a year later. Wilson fired his first court-appointed attorney six months after his arrest. His second and third court-appointed attorneys withdrew after one month each, both citing the large amount of work the case would involve and the deterioration of their relationship with Wilson. The fourth, Danielle Neroni, represented Wilson for eight months before she requested permission to withdraw. She suggested that Wilson should be represented by Kenneth Moynihan, who had been appointed to represent Wilson in a state criminal case, and explained that her and Wilson's relationship had frayed. In a November 2015 hearing, Moynihan told the court that he would be prepared in time for the court's scheduled January 11, 2016 trial date. After being warned by the court that the trial had already been delayed five times and would not be rescheduled again, and that Neroni had already done substantial work on his case, Wilson affirmed that he wanted to replace Neroni with Moynihan.

Two months later, at the final pretrial conference, Moynihan informed the court that he was unprepared for trial and moved for a continuance. The court denied this motion. Wilson then informed the court on the second day of his trial that he wished to terminate Moynihan and proceed *pro se* because he believed that he understood the case better than Moynihan, was "very familiar with the process of the legal proceeding[s]," and could ask Moynihan for help if he needed any. Joint App. 421. The court strongly encouraged Wilson to reconsider, but Wilson would not budge. The court accordingly ruled that Wilson's waiver of his Sixth Amendment rights was knowing, voluntary, and intelligent, and permitted him to proceed *pro se*.

During the trial, the government introduced evidence showing that it had made several controlled purchases of crack cocaine from Wilson, and that, when arrested, Wilson was found

3

with five cell phones, $5,700 in cash, drug paraphernalia, and keys to houses that, when searched, were found to contain heroin and more drug paraphernalia. Wilson's former girlfriend testified that she knew that Wilson sold heroin and crack, and that she helped him bag the heroin. Her sister also testified that she bagged heroin for Wilson and that Wilson had kept heroin in her home. Six of Wilson's alleged co-conspirators — Jeffrey Dowdell, Tashawn Albert, Barbara Hickman, Zephaneea Dowdell, Darnyl Apgar, and Jamal Harris — attested that he sold heroin and crack. Finally, the government played recordings of Wilson's phone calls from jail to his parents, in which he suggested that the government had sufficient evidence to convict him.

Wilson's principal defense at trial was that he sold marijuana, not crack or heroin, and that the government had fabricated evidence that he sold the latter two as retaliation for a successful § 1983 lawsuit that he brought against the Syracuse Police Department in 2006. Wilson was able to cross-examine law enforcement officers as to whether they fabricated evidence against him, and to suggest that his alleged co-conspirators were testifying against him in exchange for reduced prison sentences. The government also cross-examined Wilson about this conspiracy theory. But the court had ruled in the final pretrial conference that Wilson would be barred from introducing evidence about the 2006 lawsuit during the trial, so Wilson was not permitted to reference the lawsuit during his testimony or his cross-examination of government witnesses.[1] The court also ruled that another line of questioning Wilson wanted to pursue — whether one of his co-conspirators had acquired cocaine from a third party named Melvin Moon Williams — was irrelevant under Fed. R. Evid. 401.

---

[1] The court had concluded that, under *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997), any such evidence would have to be presented as part of a pre-trial motion to dismiss and would have no bearing on Wilson's factual innocence.

Throughout the trial, Wilson repeatedly asked improper questions, bickered with the court when it ruled adversely to him on evidentiary matters, and accused the court of partiality towards the government. The court accordingly expressed frustration with him throughout the trial. After one particularly heated exchange with Wilson, Chief Judge Suddaby told the jury that although he had been "at times upset . . . as far as improper procedure," the jury should not be swayed or influenced by his comments. Joint App. 1495.

During closing arguments, the government attacked Wilson's conspiracy theory and argued that the officers who testified against Wilson had little incentive to perjure themselves to convict a low-level dealer like Wilson. It also suggested that the officers' oath to testify truthfully inherently "means something to decorated law enforcement personnel," whereas Wilson had nothing "to lose by testifying falsely" because he was not "worried . . . about an additional charge of perjury." *Id.* at 1782, 1783. Wilson objected to both statements as improper, but the court overruled his objections.

Finally, during jury instructions, the court told the jury that it could consider Wilson's prior conviction for drug trafficking as evidence both that Wilson acted "knowing and intentionally and not because of some mistake, accident, or other innocent reasons," and that Wilson "was the person who committed the acts charged in this indictment," based on those acts' similarity to his previous criminal conviction. *Id.* at 1862, 1861. Wilson did not object to these instructions.

Wilson was convicted of one count of conspiracy to sell crack cocaine and heroin and one count of possession of heroin with intent to sell, in violation of 21 U.S.C. §§ 841(a) and 846. He was sentenced to serve 28 years in prison. He filed this appeal, and now argues that (A) his waiver of his Sixth Amendment rights was not voluntary, (B) the court erred in denying him the ability to present evidence about his past lawsuit against the Syracuse Police Department and Melvin Moon

5

Williams's role as a drug supplier, (C) the court made prejudicial comments against him during the trial, (D) the government improperly vouched for its witnesses, and (E) the jury instruction concerning his past conviction was in error.

## 2. Analysis

### A. Wilson's Right to Counsel

Wilson first argues that his waiver of his Sixth Amendment right to counsel was not voluntary. "A defendant [] has two correlative and mutually exclusive Sixth Amendment rights: the right to have counsel, on one hand, and the right to refuse counsel and represent himself, on the other." *United States v. Gerritsen*, 571 F.3d 1001, 1007 (9th Cir. 2009). Violation of either right is a structural error, warranting reversal. *See McKaskle v. Wiggins*, 465 U.S. 168, 177 n.7 (1984). When a criminal defendant waives his Sixth Amendment right, the trial court must inquire as to whether the waiver was knowing, intelligent, and voluntary. *United States v. Schmidt*, 105 F.3d 82, 88 (2d Cir. 1997). We review the district court's supporting factual findings for clear error and the validity of the defendant's choice to represent himself *de novo*. *Id.*

Wilson does not dispute that his waiver was knowing and intelligent. He argues instead that his waiver was not voluntary because his attorney, by counsel's own admission, was insufficiently prepared for trial. *See, e.g.*, *Pazden v. Maurer*, 424 F.3d 303, 316 (3d Cir. 2005) (holding that a Sixth Amendment waiver in such circumstances is not truly voluntary). We disagree. When Wilson waived his Sixth Amendment right, he did not suggest that he was doing so because he felt coerced. Rather, Wilson insisted that he was ready for trial and assured the court that he was "very familiar with the process of the legal proceeding[s]," especially if Moynihan continued to advise him throughout the trial. Joint App. 421. Wilson and the judge had an extensive colloquy on this subject, during which the court repeatedly encouraged Wilson to reconsider. *See*

6

*Schmidt*, 105 F.3d at 88 (holding that a Sixth Amendment waiver in similar circumstances was knowing, intelligent, and voluntary). Because Wilson told the district court that he was capable of adequately representing himself, his case is very different from those in which courts have found defendants' waivers to be involuntary. *See, e.g.*, *Pazden*, 424 F.3d at 316 (holding that waiver was involuntary because the record contained "statements by [the defendant] explaining the dilemma he was placed in").

Moreover, to the extent that Moynihan was unprepared, Wilson had only himself to blame: he fired his first lawyer, his next two resigned because their relationship with him deteriorated, and he replaced the fourth two months before trial, even after the court warned him that his trial date would not be moved again. To hold that Wilson's waiver was involuntary in such circumstances would give future criminal defendants the ability to "disrupt proceedings by demanding new counsel whenever he differs from his lawyer's strategic, legal, or ethical judgments about how to conduct a case." *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir.), *cert. denied sub nom. Ponte v. United States*, 137 S. Ct. 456 (2016). In sum, a Sixth Amendment waiver is not *per se* involuntary simply because the defendant's counsel is unprepared when the defendant is responsible for the counsel's lack of preparation. *Cf. United States v. Hall*, 610 F.3d 727, 740 (D.C. Cir. 2010) (holding that a defendant's Sixth Amendment waiver was voluntary, even though his counsel was unprepared, because the government was not at fault for the counsel's lack of preparation). Accordingly, the district court did not err in concluding that Wilson's waiver was voluntary.

**B. Wilson's Right to Present a Defense**

Second, Wilson argues that the court wrongly prevented him from pursuing two different lines of cross-examination. Criminal defendants are guaranteed a "meaningful opportunity to

7

present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)), but trial courts have a responsibility to exclude irrelevant evidence, as well as evidence especially likely to cause "unfair prejudice, confus[e] [] the issues, or . . . mislead the jury," *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). When courts exclude evidence under Rules 401 and 403, we review their rulings for abuse of discretion. *United States v. Gupta*, 747 F.3d 111, 137 (2d Cir. 2014); *United States v. Lee*, 833 F.3d 56, 73 (2d Cir. 2016). However, we apply harmless error review when evidence is wrongfully excluded. *See Gupta*, 747 F.3d at 133. Under this test, "we ask whether we can conclude with fair assurance that the errors did not substantially influence the jury." *Id.* (quoting *United States v. Oluwanisola*, 605 F.3d 124, 133 (2d Cir. 2010)). To assess this, "we normally consider such factors as (1) the importance of unrebutted assertions to the government's case; (2) whether the excluded material was cumulative; (3) the presence or absence of evidence corroborating or contradicting the government's case on the factual questions at issue; (4) the extent to which the defendant was otherwise permitted to advance the defense; and (5) the overall strength of the prosecution's case." *Gupta*, 747 F.3d at 133–34 (quoting *Oluwanisola*, 605 F.3d at 134).

Wilson argues that the district erred when it held during the pretrial conference that Wilson could not introduce evidence concerning his lawsuit against the Syracuse Police Department. Evidence of his past lawsuit could have helped him establish motive for his theory that law enforcement officers had framed him. Wilson is correct that the district court was wrong to exclude *all* references to the lawsuit, but we hold that this was harmless error. This excluded evidence was cumulative: Wilson was able to introduce his retaliation theory during the trial, which is why the government cross-examined him on the subject. He was also able to suggest during his testimony and cross-examination of other witnesses that the government pressured his co-conspirators to lie

about his role in the conspiracy. Additionally, the government's evidence would have been overwhelming even if Wilson had been able to testify about the lawsuit: Wilson's former girlfriend, her sister, six co-conspirators, and multiple law enforcement officers all testified that Wilson sold heroin and crack, and Wilson admitted in a recorded phone call to his parents that the government's case against him was strong enough to convict him.

He next contends that the court erred in preventing him from asking a co-conspirator whether he obtained cocaine from a third party named Melvin Moon Williams. The court excluded this line of questioning as irrelevant under Rule 401. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the act." *Id.* We conclude that the district court did not abuse its discretion in ruling that Melvin Moon Williams's role was not "of consequence" in this trial. Even if Melvin Moon Williams had supplied some of Wilson's co-conspirators with cocaine, that would not disprove that Wilson *also* supplied them with cocaine and heroin. Accordingly, we hold that Wilson's was not denied a "meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690.

### C. The District Court's Comments in the Presence of the Jury

Third, Wilson claims that he was denied a fair trial because Chief Judge Suddaby made comments to the jury that suggested that he believed Wilson was guilty. *See United States v. Nazzaro*, 472 F.2d 302, 312–13 (2d Cir. 1973) (holding that a judge's biased comments may deprive a criminal defendant of a fair trial). Such comments amount to reversible error only if "the jury was so impressed with the judge's partiality to the prosecution that it became a factor in determining the defendant's guilt or whether it appeared clear to the jury that the court believed the accused is guilty." *United States v. Amiel*, 95 F.3d 135, 146 (2d Cir. 1996) (quoting *Nazzaro*,

9

472 F.2d at 303) (brackets omitted). We have reviewed the record and conclude that there was no reversible error. Wilson first objects to the court referring to his questions as "wasting a lot of time," Joint App. 669, but the court said this after Wilson had asked a witness repetitive questions over several hours and ignored the district court's repeated warnings that he would have to conclude his questioning eventually. The other purportedly prejudicial comments were made after Wilson bickered with the court about its evidentiary rulings. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (explaining that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Finally, Wilson made several disrespectful comments to the judge throughout the trial and was sufficiently disruptive during the proceedings that at one point he had to be removed from the courtroom. The court no doubt expressed "impatience, dissatisfaction, annoyance, and even anger" in response to all of this, but not so much as to "establish[] bias or partiality." *Id.* at 555–56. Wilson thus has not established that "it appeared clear to the jury that the court believed the accused is guilty." *Amiel*, 95 F.3d at 146 (quoting *Nazzaro*, 472 F.2d at 303) (brackets omitted).

### D. Prosecutorial Misconduct

Fourth, Wilson argues that the government improperly vouched for its witnesses during its summation. "To prevail on this claim, [Wilson] must demonstrate (1) that the prosecutor's statements were improper and (2) that the remarks, taken in the context of the entire trial, resulted in substantial prejudice." *United States v. Bautista*, 23 F.3d 726, 732 (2d Cir. 1994). Because Wilson objected to the statements at issue below, we review for abuse of discretion the district court's rulings admitting the government's statements. *See United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011). When "determining whether substantial prejudice has resulted, we consider 'the severity of the misconduct, the measures adopted to cure it, and the certainty of

10

conviction in the absence of the misconduct.'" *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (quoting *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995)).

Wilson argues that two statements were improper. First, the government stated: "I would submit to you that this oath is absolutely meaningless to this defendant. It means nothing. What does he have to lose by testifying falsely? He's not worried at this point about an additional charge of perjury." Joint App. 1783. Second, after observing that the law enforcement officers who testified against Wilson had testified under oath, the government said that this "oath means something to decorated law enforcement personnel who do not wish to perjure themselves and commit crimes and make false accusations with their long-standing careers." Joint App. 1782.

The United States concedes that the second comment was improper. Assuming *arguendo* that the first comment was also improper, we conclude that neither resulted in substantial prejudice to Wilson. These were fleeting comments made during an otherwise appropriate defense of the officers' credibility. *See United States v. Elias*, 285 F.3d 183, 191 (2d Cir. 2002) (holding that "the severity of the misconduct is mitigated if the misconduct is an aberration in an otherwise fair proceeding," and that "isolated remarks [] ordinarily" do not cause substantial prejudice); *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) (holding that the government may respond to attacks on the credibility of its witnesses). Additionally, the court corrected any confusion the government's comments might have caused by instructing the jury afterwards that a government witness's testimony is not "necessarily deserving of more or less consideration . . . than that of any ordinary witness." Joint App. 1855; *see Elias*, 285 F.3d at 192 (holding that a corrective jury instruction can cure the prejudicial impact of an improper statement). Finally, as discussed above, the evidence against Wilson was overwhelming, and his sole, implausible defense was that federal and local officials conspired with his girlfriend, her sister, and six co-conspirators to frame him

11

for selling heroin and cocaine, when he really sold marijuana. *See United States v. Modica*, 663 F.2d 1173, 1182 (2d Cir. 1981) (per curiam) (declining to reverse when the defendant "was caught red-handed, and his explanation was implausible"). Wilson has thus failed to show that these comments amounted to reversible error.

### E. The Court's Instructions

Finally, Wilson challenges the court's jury instructions. "A defendant challenging a jury instruction as erroneous must show 'both error and ensuing prejudice.'" *United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010) (quoting *United States v. Quinones*, 511 F.3d 289, 313–14 (2d Cir. 2007)). We assess whether the jury charge "as a whole . . . adequately communicated the essential ideas to the jury," and "do not review [the] [] charge on the basis of excerpts taken out of context." *Sabhnani*, 599 F.3d 237 (internal citations and quotation marks omitted). We review this issue for plain error because Wilson did not object to the jury instructions below. *See United States v. Veliz*, 800 F.3d 63, 76 (2d Cir. 2015). He therefore must show that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected his substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)) (brackets omitted).

The court instructed the jury that it could consider Wilson's prior criminal conduct as evidence that Wilson acted "knowingly and intentionally and not because of some mistake, accident, or other innocent reasons," and also that Wilson "was the person who committed the acts charged in this indictment," based on those acts' similarity to his previous criminal conviction. Joint App. 1862, 1861. Wilson argues that both instructions were plain error because they were extraneous to his case, given that the other act evidence here was admitted as background to the

12

conspiracy, yet still encouraged the jury to infer that his "prior conviction could be considered as evidence that he committed the acts charged in the indictment," in violation of Fed. R. Evid. 404(b). Reply Br. 19–20. We disagree. A jury instruction that is legally accurate but merely "extraneous to [the] case" does not amount to reversible error, let alone plain error, "at least absent further instruction as to a legal theory that would support liability based on" the extraneous instruction. *Sabhnani*, 599 F.3d at 238. There was no such erroneous further instruction below, and so Wilson's explanation as to how the jury instructions prejudiced him is unconvincing. In fact, the district court told the jury twice that it could not consider evidence of Wilson's past conduct "as a substitute for proof that the defendant committed the crime charged here" or "as proof that defendant has a criminal personality or bad character." Joint App. 1861. So even assuming *arguendo* that some "excerpts taken out of context" were erroneous, the jury charge "as a whole . . . adequately communicated the essential ideas to the jury." *Sabhnani*, 599 F.3d 237 (quoting *United States v. Tran*, 519 F.3d 98, 105 (2d Cir. 2008)) (internal quotation marks omitted). Wilson has thus failed to show that the jury charge was plain error.

*     *     *

We have considered Wilson's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk