18-2059(L)
*United States v. Atias*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of April, two thousand twenty.

PRESENT:
>            RICHARD C. WESLEY,
>            SUSAN L. CARNEY,
>            STEVEN J. MENASHI,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

>            *Appellee,*

>            v.                                                                Nos. 18-2059, 18-2269

JOSEPH ATIAS, SOFIA ATIAS,

>            *Defendants-Appellants,*

NICHOLAS A. PELLEGRINI, PAULA BERCKOFF,

>            *Defendants.*

_____

FOR DEFENDANTS-APPELLANTS:                    JAMESA J. DRAKE, Drake Law, LLC,
                                                                              Auburn, ME (for Joseph Atias); KATE E.
                                                                              OLIVIERI (Marc L. Mukasey, *on the brief*),

Mukasey Frenchman & Sklaroff, New York, NY (for Sofia Atias).

FOR APPELLEE:                    BURTON RYAN (David C. James, Charles P. Kelly, *on the brief*), Assistant United States Attorneys *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from judgments of the United States District Court for the Eastern District of New York (Hurley, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments entered on July 26, 2018, are **AFFIRMED**.

Joseph Atias and Sofia Atias (the "Atiases") appeal from the District Court's judgments of conviction entered against them after a jury trial. In March 2017, a jury found each of the Atiases (a married couple) guilty of bank fraud and conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344 and 1349 and theft of government funds in violation of 18 U.S.C. § 641. In December 2017, the District Court denied the Atiases' respective motions for a judgment of acquittal and a new trial. *United States v. Atias*, No. 14-CR-0403, 2017 WL 6459477 (E.D.N.Y. Dec. 18, 2017). As relevant here, the District Court judgments imposed joint forfeiture obligations on the Atiases in the amount of $465,965.09, and restitution obligations in the amounts of $539,773.67 (payable to Bank of America) and $49,956.82 (payable to the New York Medicaid Fraud Control Unit). These appeals, now consolidated, followed.

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm the District Court's judgments.

1. *Proposed Testimony by Zarate*

On appeal, the Atiases first argue that the District Court committed reversible error in allowing witness Carlos Zarate to invoke the Fifth Amendment and on that basis to

decline to provide testimony the Atiases sought from him. Zarate, along with attorney Nicholas Pellegrini, helped the Atiases effect the transactions underlying the Atiases' bank fraud and conspiracy charges, a fraudulent short sale of their residential property located at 83 Cathedral Avenue in Hempstead, New York. The testimony the Atiases sought concerned work that Zarate conducted with Pellegrini on transactions and proposed transactions other than the 83 Cathedral Avenue short sale. The District Court excluded this evidence under Federal Rule of Evidence 403, ruling that the probative value of having Zarate testify to his history with Pellegrini was substantially outweighed by concerns that the testimony would have been a "wast[e] [of] time" and present "needless[] . . . cumulative evidence." Fed. R. Evid. 403. We review the District Court's evidentiary decisions for abuse of discretion. *See United States v. Gupta*, 747 F.3d 111, 132 (2d Cir. 2014).

We perceive no such abuse here. The District Court reasonably concluded that introduction of any such testimony would produce collateral factual disputes about transactions other than the 83 Cathedral Avenue transactions, wasting time. Rejecting the Atiases' proffered reason for seeking such testimony—to impeach Pellegrini—the District Court correctly pointed out that Pellegrini had already been substantially impeached on cross-examination, rendering the desired additional testimony no more than cumulative.

On appeal, the Atiases also assert that Zarate's testimony as to other similar frauds would have buttressed the Atiases' defense that they were his victim, not co-perpetrators of the fraud. It would have demonstrated, they now say, that Pellegrini regularly duped homeowners. The Atiases did not adequately present this rationale to the District Court, however, and have developed it beyond an implication only on appeal. Therefore, we cannot say that the District Court's exclusion of the testimony exceeded the permissible bounds of its discretion.[1]

2. *Missing Witness Instruction for Zarate*

---

[1] The Atiases also challenge the District Court's ruling that Zarate was entitled to invoke the Fifth Amendment. Because we affirm the court's exclusion of the evidence on Rule 403 grounds, we do not address the alternative Fifth Amendment rationale further.

The Atiases contend next that the District Court erred by failing to give a missing witness instruction, as they requested at trial. The charge was called for with respect to Zarate, they assert, because Zarate became a "missing" witness when the government chose not to immunize him, thereby entitling him to invoke his Fifth Amendment privilege with respect to unrelated transactions but alleged to be similar to the Atiases' short sale. We review a district court's decision to deny a missing witness charge for abuse of discretion. *See United States v. Nichols*, 912 F.2d 598, 601 (2d Cir. 1990).

Zarate made himself available to both the prosecution and the defense to testify about the 83 Cathedral Avenue transactions. As discussed above, the District Court reasonably excluded Zarate's testimony regarding transactions other than the 83 Cathedral Avenue short sale under Rule 403. Because we have concluded that the District Court did not abuse its discretion by excluding the proposed testimony on grounds other than Zarate's invocation of the Fifth Amendment, the question whether the District Court should have provided a missing witness instruction is moot.

3. *Conscious Avoidance Instruction*

The Atiases next charge error in the District Court's instructions to the jury as to conscious avoidance. The bank fraud statute under which the Atiases were indicted requires that a defendant "knowingly execute[], or attempt[] to execute, a scheme or artifice . . . to defraud a financial institution." 18 U.S.C. § 1344. A conscious avoidance instruction tells jurors that they may infer such knowledge from proof that a defendant consciously avoided learning of the fraudulent nature of a transaction. Our precedent describes the circumstances in which such an instruction is appropriate as follows:

> [A] conscious avoidance instruction may be given only (i) when a defendant asserts the lack of some specific aspect of knowledge required for conviction, and (ii) the appropriate factual predicate for the charge exists, *i.e.*, the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.

*United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003) (internal quotation marks and citations omitted). Regarding requirement (ii), the evidentiary basis for the instruction, we

4

have ruled that "[a] factual predicate may be established where a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *United States v. Lange*, 834 F.3d 58, 78 (2d Cir. 2016) (internal quotation marks and brackets omitted). The Atiases argue that no such factual predicate was present in their case.

When considering a "challenge to the sufficiency of the evidence to support a conscious avoidance conviction," we "review all the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *Aina-Marshall*, 336 F.3d at 171 (internal quotation marks omitted).

The record here, understood in this light, readily provides the requisite factual predicate. The evidence shows that the Atiases knew that Sacred Heart Academy's purchase offer exceeded the mortgage balance; nevertheless, defendants prevailed upon Bank of America to approve a non-arms-length short sale to a shell company controlled by them, and then sold the property to the school through the shell company at a large profit. This evidence easily meets the "overwhelmingly suspicious" standard that we articulated in *Lange*.

4. *Limitation on Sofia's Testimony*

Next, the Atiases submit that the District Court's judgment cannot stand because the court wrongly precluded Sofia from testifying at trial regarding her understanding of the legal advice they received. In particular, she sought to recount what Joseph relayed to her about counsel's advice to him about the permissibility of the transactions.

Without deciding whether the District Court's ruling on this testimonial question was erroneous, we instead turn directly to considering whether, if error, the error was harmless. When conducting a harmless error review, "we ask whether we can conclude with fair assurance that the errors did not substantially influence the jury." *United States v. Oluwanisola*, 605 F.3d 124, 133 (2d Cir. 2010) (internal quotation marks omitted).

5

After review, we comfortably conclude that any such error did not "substantially influence the jury." *Id.* This conclusion is not difficult because, despite the District Court's specific evidentiary ruling, Sofia did, in fact, testify to what Joseph had relayed to her about the attorneys' advice. *See* App'x 1275–79. In addition, Sofia fails on appeal to describe with particularity any additional testimony that she would have given but for the ruling and that, in her view, would have substantially influenced the jury in her favor. Therefore, we decide that, even if erroneous, this error was harmless as to Sofia.

For the same reasons, we also conclude that the curtailment of Sofia's testimony was harmless as to Joseph. Joseph gave a robust account of the advice the attorneys gave him and his account was fortified by what Sofia actually testified. The potential impact on him of the charged evidentiary error was even more marginal than it was on Sofia. In both cases, therefore, we have "fair assurance" that the error did not "substantially influence" the jury's decision.

5. *Sufficiency of the Evidence on Theft of Government Funds*

The Atiases also appeal the District Court's denial of their Rule 29 motions for judgment of acquittal on the charges of theft of government funds in violation of 18 U.S.C. § 641. They argue that the government was required to prove that they were ineligible to receive Medicaid benefits for at least one month that they received benefits in order to establish violations of section 641. "[W]e will uphold the judgments of conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks omitted).

At trial, the jury heard that the Atiases would have been ineligible to receive Medicaid benefits in any month in which they earned more than $3,000 in income. App'x 278–79. The government produced evidence of several streams of income that exceeded that threshold: certain corporate payments covering the Atiases' personal expenses; an inheritance; the receipt of the proceeds of the 83 Cathedral Avenue transactions; and access to a credit card for $50,000 to cover personal expenses. Nevertheless, the Atiases argue that Medicaid

6

eligibility is based only on "available" income and that the government failed to account for deductions to those income streams and to prove "available" income exceeding $3,000 in any particular month.

We conclude that a rational juror could have found that the Atiases received more than $3,000 in available income in a month they received Medicaid benefits based, at least, on evidence showing they had access to a credit card for $50,000 to cover personal expenses. The jury saw an affidavit in which Joseph swore that he had received access to the "credit card to use for . . . personal expenses, which [he] did for about $50,000." Gov't App'x 196. The jury also heard expert testimony, which it was entitled to credit, that access to the credit card would have "disqualified [the Atiases] . . . from Medicaid for . . . three months in 2010." App'x 379. Finally, the jury heard testimony from both sides' experts about the different types of deductions, App'x 350–52, 1804–06, including testimony in which the Atiases' expert identified potential deductions from the $50,000. App'x 1863–65. This evidence was sufficient for the jury to find the essential element of conviction.

*6. Calculation of Restitution*

In their final challenge, the Atiases urge that the District Court miscalculated the amount of the restitution obligation that it imposed with regard to the New York Medicaid Fraud Unit under the Mandatory Victims Restitution Act ("MVRA"). *See* 18 U.S.C. § 3663A. From 2009 to 2014, the Atiases applied for and received Medicaid benefits from New York State despite their receipt during those years of income far exceeding the approximately $3,000 per month limit for their Medicaid eligibility. The District Court ordered payment in the amount of $49,956.82. In calculating this amount, the Atiases assert, the District Court incorrectly included the value of Medicaid benefits provided during the relevant period to the five children born of Sofia's first marriage, to Jacques Amsellem (the "Amsellem children"), combining those benefits with amounts paid on behalf of the three issue of the Atias marriage (the "Atias children").

The MVRA provides that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C.

§ 3664(e). We review the District Court's calculation for abuse of discretion. *See United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006).

We perceive no abuse here. Medicaid expert Heather Griffin testified for the government at a post-trial restitution hearing that both Sofia Atias and Jacques Amsellem listed the five Amsellem children on their applications for Medicaid benefits, but that the Amsellem children received benefits under Jacques Amsellem's case number. Griffin explained at trial, however, that the Atias family's income bore on New York's determination of the Medicaid eligibility of the five Amsellem children, whom it considered a part of the Atias account:

> [The Amsellem children are] active on the father's [Jacques Amsellem's] file, but they are considered as part of the [Atias] household account. In other words, Medicaid is compared to different levels based on how close ties to they are part of [sic] the Atias family's budget you referred to. So a family of ten.

App'x 298. Thus, this evidence suggests that the five Amsellem children were counted as part of the Atias family and the Atias family income (which was misreported) contributed to the calculation of the erroneous Medicaid payments made to the Amsellem children. Given this evidence, we cannot say that the District Court committed clear error or otherwise abused its discretion in ordering that the Atiases make restitution in a dollar amount that includes the Medicaid benefits received by the Amsellem children.

\*     \*     \*

We have considered all of the Atiases' remaining arguments and conclude that they are without merit. The District Court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

8